Paul SAVILLE and Marvin Saville, Appellants,

v.

Limuel BRADSHAW and Mrs. Limuel Bradshaw, Respondents.

No. 48946.

Supreme Court of Missouri,

Division No. 2.

Sept. 10, 1962.

Frederick E. Steck, Sikeston, for appellant.

Weber Gilmore, Sikeston, for respondent.

BARRETT, Commissioner.

This action was initiated by the plaintiff brothers, Paul and Marvin Saville, against Limuel Bradshaw and his wife as a suit to quiet the title to a lot in Morehouse. The plaintiffs alleged that by reason of thirty-one years' adverse possession they were the fee simple owners of the lot and that the defendant and his wife claimed some interest in it by reason of a sheriff's deed for delinquent taxes for the year 1934. The defendants filed an answer in which they asserted fee simple ownership by reason of the tax deed. They also filed a counterclaim in which they sought an order requiring the plaintiffs to vacate the premises and damages of $1,000. The trial court entered judgment against the plaintiffs on their petition and in favor of the defendants on their counterclaim and the plaintiffs have appealed.

The following are the circumstances relied on by the plaintiffs as establishing as a matter of law adverse possession for at least ten years and consequently fee simple title to the lot as against the defendants' tax deed. In September 1928 the plaintiffs' father, Harley Saville, purchased the lot from Dan Baker, "he did pay it out at so much, and paid it every two weeks * * * and I think it was five dollars." In any event, Baker gave Mr. Saville a warranty deed to the lot and the Savilles and their children moved onto the property and lived there continuously until the father and mother died in 1956. Paul Saville is now aged 52 years and Marvin is 48. They moved to the lot with their parents in 1928 and one or the other of them has lived there since 1956. In 1928 there was a two-room house on the lot and a beehive factory building, the house burned in 1930 and the Savilles moved into the factory building. Paul tore the building down in 1957 and has built a four-room house on the lot which he says is of the value of $1,500. Paul's title to the lot, in addition to his interest as a surviving son, consists of quitclaim deeds from three of his sisters and brothers. Marvin has no deed, he claims "a half * * as an heir" of his father and mother. The plaintiffs' father and mother paid the taxes on the lot until 1934 but since that date the Savilles have paid no taxes, the plaintiffs say that they offered to pay the taxes but "they" refused to accept them. Since 1934 the respondents Bradshaw have paid the taxes and neither Paul nor Marvin have said anything to Mr. Bradshaw about it. Marvin said, "I couldn't get that close to him, and I thought he might be a good friend to pay my taxes like that, and I sure appreciated it." Both Paul and Marvin say that they did not know that the land sold for taxes in 1934. They have paid no rent and claim that Bradshaw has never been on the premises and has made no improvements. They do concede that in June 1956 Bradshaw gave them written notice to vacate the premises and that thereafter Paul built the four-room house.

In these circumstances the appellants say that "plaintiffs' father bought this property on September 5, 1928, and he and his family immediately moved on the premises raising his family adverse to all since he took possession under a Warranty Deed * * * and he had actual continuous, adverse possession of these premises until he died on

March 16, 1956. Plaintiffs' father did not record his Warranty Deed to the lot which was dated September 5, 1928, until September 19, 1939. Defendant bought this property at a Tax Sale on December 28, 1934, but did not record his deed until October 17, 1944, after plaintiffs' father recorded his deed on September 19, 1939. * * * Not only did plaintiffs' father own this lot by virtue of being in adverse possession for more than 10 years, but plaintiffs had a superior record title than defendant because he recorded his deed on September 19, 1939, while defendant did not record his tax deed which he received in 1934 until October 17, 1944." Therefore the appellants conclude that "When defendant bought this lot for taxes in 1934, he took subject to the title of plaintiffs' father who was in open, notorious and adverse possession of the lot when record title at the time of the Tax Sale was in another."

█ The respondent, Limuel Bradshaw, to show that the Savilles' occupancy of the lot was permissive and not adverse testified that he bought this particular lot along with other lots at a tax sale in 1934 and then he said, "his father and mother (Paul Saville's) were living there and pretty old, and they didn't stay at home too much, the kids didn't. * * * they didn't have any system of Relief at that time and they were pretty old and I just told them they could go ahead and stay there as long as they lived and didn't have to worry and that is why the old man and woman stayed there." Later he said that he didn't do too much to the lot "because I promised them that place and let them live there, and I didn't disturb it * * *." Appellants' counsel objected to these statements and this testimony: "We object to that as it is hearsay and objectionable, for that reason, and it is a violation of the Dead Man's Statute and having told the deceased, Harley Saville, and would be a self-serving declaration, and we object to it on those grounds." In the circumstances of this case, particularly in view of the essential issue involved,

Mr. Bradshaw's testimony should have been excluded. Lambert v. Rodier, Mo. App., 194 S.W.2d 934; Bagnell v. Chemical Bank of Sweet Springs, 76 Mo.App. 121, 125. As the court said in Eaton v. Cates, Mo., 175 S.W. 950, 953, an adverse possession case, "We are of the opinion that William Eaton, Sr., was not a competent witness to testify as to the conversations which were offered to be proven by him which he had with his brother James, regarding the terms and conditions upon which the land and personal property mentioned were placed in the hands of James Eaton, at the time the witness went to California. At the time William Eaton was offered as a witness, James Eaton, the husband and father of the defendants, was dead. Under both the letter and spirit of section 6354, R.S.1909, (V.A.M.S. § 491.010, Mo.R.S.1959) William Eaton was disqualified from testifying regarding those matters."

█ Normally, since this was a court-tried case, the erroneous admission of this testimony would not demand the granting of a new trial. Since this was a court-tried case, this court, normally, would review the case upon the law and the evidence anew and ignore the improperly admitted evidence (Sup.Ct.Rule 73.01(d), V.A.M.R.) and finally enter such judgment as the trial court ought to have entered or "as to the appellate court shall seem agreeable to law." Sup.Ct.Rule 83.13. It is not possible upon this record however to apply these general rules and confidently dispose of this appeal. The participants in this trial, the parties and their counsel, may have had personal knowledge of all the facts stated or assumed in their briefs, particularly, to illustrate, of the facts set forth in the preceding quotations from the appellants' brief, but certain of these essential and compelling facts and testimony do not appear in this transcript and of course are not available to this court. The exhibits, if any, were not offered in evidence and certain crucial dates are not established.

By answer to interrogatories, by stipulation of the parties and otherwise, it was established that Harley Saville purchased the lot from Baker in 1928, moved onto the premises and lived there until his death in 1956, but it does not appear from the transcript when his deed was recorded. As to the defendants' tax deed there was a stipulation: "It is agreed that Mr. Gilmore's client (Bradshaw) received a Sheriff's Deed, which he received at a Tax Sale on the 28th day of December, 1934," but the record does not show when that instrument was recorded, and it does not show against whom the tax proceedings were directed and there is here no attack upon that deed or the proceedings upon which it is based. In this latter connection see the following cases: Gaines v. Saunders, 87 Mo. 557; Adams v. Gossom, 228 Mo. 566, 129 S.W. 16; King v. Fasching, Mo., 234 S.W.2d 549; Shaw v. Armstrong, Mo., 235 S.W.2d 851 and the law review notes 16 Mo.L.R. 395, 16 Mo.L.R. 461.

This is not to indicate to the parties how the case should be tried, what evidence should be admitted or rejected, and it is not to indicate the theories upon which it should be tried or decided in the trial or appellate court. It is sufficient to state that in the present posture of the record, the theories of the parties are not completely articulated and this court is left with the alternative of deciding the case on the basis of various presumptions and the burden of proof. State ex rel. Edie v. Shain, 348 Mo. 119, 152 S.W.2d 174; 3 Am. Jur.2d (Adverse Possession), Secs. 248, 249. In this connection there is the problem of the force and effect of the tax sale (annotations 136 A.L.R. 1349, 50 A.L.R.2d 600) and the character of the holding after 1934. In other words, the burden of proof and the indicated presumptions may or may not result in assumptions plainly contrary to the fact. In this immediate connection see 2 C.J.S. Adverse Possession § 87, p. 640; § 105, p. 659, and the note to Miller v. Berry, Mo.App., 270 S.W.2d 666 in 21 Mo.L.R. 91 and annotation 170 A.L.R. 776.

For the reasons indicated the judgment is reversed and the cause remanded for such further action as the parties deem advisable.

BOHLING and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by BARRETT, C., is adopted as the opinion of the Court.

All of the Judges concur.