DORAL H. SHAW ET AL., Respondents, v. COMMODORE P. ARMSTRONG ET AL., Defendants, JOHN A. LIVINGSTONE, Appellant, No. 41638— 235 S. W. (2d) 851.

Special Division Three, January 15, 1951.

*R. H. Musser, Frank L. Pulley* and *J. A. Livingstone,* pro se, for appellant.

*J. B. Beavers* for respondents.

[852] McDOWELL, J.—This is an action to quiet title. The first amended petition was filed in the Circuit Court of Clinton County, Missouri, December 21, 1948. A separate answer was filed by defendant, John A. Livingstone. The cause was tried April 7, 1949, and judgment rendered for plaintiffs. Defendant, John A. Livingstone, appealed.

The petition is in regular form and states that plaintiffs are the joint owners in fee simple of the lands described in the petition, having acquired same by purchase under a deed dated May 6, 1948, from Robert H. Frost, who held title to said land as trustee for the County Court of Clinton County.

The separate answer to the first amended petition denies plaintiffs are the owners of the land in question. The answer states if plaintiffs purchased the land, as alleged in the petition, the deed is void for the reason no legal taxes assessed against said property were due and unpaid when it was conveyed to the trustee of Clinton County or the predecessor trustee; that said property was not advertised for sale

or described as directed by law; that the deed was void because of gross inadequacy of consideration, and defendant, John A. Livingstone, prays the court to adjudge and determine the title to be in him.

Only one defendant filed a separate answer in this case and we will refer to the [853] parties as they were in the lower court, plaintiffs and defendant.

The facts in the case are practically undisputed. It is not denied that there were delinquent back taxes due on the property in question for the years 1936, '37, '38, '39, '40, '41 and '42 returned delinquent in the name of Harry Nelson. It is not denied that the County Court of Clinton County designated W. T. Harbison to bid said property in and hold the same as trustee for the benefit of the funds entitled to participate in said taxes when the land was sold. It is not disputed that said property was advertised a third time for sale for the nonpayment of delinquent back taxes in the sum of $128.30 for the years stated herein and was, by the Collector of Revenue, sold to W. T. Harbison for the amount of the delinquent back taxes to-wit, $128.30, on November 8, 1943. It is not disputed that Robert H. Frost was designated as successor trustee by the County Court for said county, January 8, 1945, to succeed W. T. Harbison. It is not disputed that on the 4th day of May, 1948, G. W. Carmack, Collector of Revenue of Clinton County, conveyed the lands described in plaintiffs' petition, by collector's deed to Robert H. Frost for the consideration of $128.38, being the amount of delinquent back taxes, interest and costs due at the time of the third sale, to-wit, November 8, 1943.

Robert H. Frost sold and conveyed this land to the plaintiffs May 6, 1948, by order of the County Court of Clinton County, and executed and delivered to them his trustee's deed therefor for the sum of $128.38. This deed is recorded in the deed records of Clinton County in book 183 at page 278.

We think the collector's deed, made May 4, 1948, to Robert H. Frost, contains all the formalities necessary to convey the legal title for delinquent back taxes and, therefore, we will not copy this deed into the facts.

There is no dispute that the deed shows on its face that on the day the collector sold the lands to the trustee for the county funds, to-wit, November 8, 1943, he did not execute a deed as required by the statute, neither did he execute a deed within four years as required by statute.

The facts show that record title to the land described in plaintiffs' petition was in Commodore P. Armstrong and Otie Armstrong, his wife, August 22, 1919; that defendant John A. Livingstone, loaned to Armstrong and wife, $750.00 and took.a deed of trust against the property, dated August 22, 1919, due three years after date. Defendant attempted to offer in evidence two unacknowledged extensions of time on this deed of trust, which were denied by the court but al-

lowed to be offered in evidence. The note secured by the deed of trust from Armstrong to defendant has notations on the back thereof showing that interest was paid up until February 22, 1929.

Defendant, Livingstone, gave the following testimony: "Q. Did you ever receive a deed? A. I received a deed from Mr. Armstrong. He was going to let this fellow Nelson have it if he made certain payments, and Mr. Armstrong just surrendered it to me, and I was to carry out this with a fellow by the name of Harry Nelson. He never kept up his payments, and the deed Mr. Armstrong gave me, I can't find it."

He testified that he thought the deed was recorded but that it did not show up on the abstract.

The defendant testified he might have held the deed some time to see if Nelson would comply with his part of the agreement to the purchase of the place. Then he gave this testimony:

"Q. Well, did you receive a deed from Armstrong? A. I received a deed from Armstrong.

"Q. Well, do you claim to own this property? A. Yes—have possession of it and had the renting of it for years. * * *

"Q. And you claimed all ownership? A. Yes, sir."

The testimony shows that the tenant in the property, at the time plaintiffs got their deed, was there under defendant, Livingstone, and plaintiffs served notice on the tenant that they were the owners and required the rent of him.

[854] The defendant testified he had owned the property since 1926 or 1927; that the value of the property was $1,000.00 and that it was worth $1,000.00 on May 4, 1948, and it was worth $1,000.00 in 1932 or maybe more.

The defendant admitted in his testimony that the property was delinquent for the back taxes for years 1936 to 1942, inclusive.

In answer to questions by the court, the defendant gave this testimony:

"THE COURT: You had a mortgage on this property—took a mortgage on it in August, 1919?

"THE WITNESS: Yes, sir. * * *

"THE COURT: Now did I understand you to say that later on the people who gave you that mortgage gave you a warranty deed to the property?

"THE WITNESS: Yes, sir.

"THE COURT: You don't have that deed?

"THE WITNESS: I don't have that deed. I have been unable to find it.

"THE COURT: Now then, do you have any definite idea as to about the date when they gave you this warranty deed?

"THE WITNESS: Along in '26 or '27, I believe.

The defendant testified the reason he didn't have the deed recorded was that he was waiting to see whether Nelson carried out his agreement with Armstrong to buy the land but defendant's testimony is undisputed that Mr. Armstrong and wife gave him a warranty deed to the property and that he has claimed to own the same since receiving said deed. He stated that it might have been in 1930 but that he had never had it recorded.

It was admitted, in the testimony by the plaintiffs' attorney, that defendant, Livingstone, paid all the taxes on this property, city, county and state since 1942, including 1947. Defendant testified the property was carried on the collector's books in his name.

The testimony shows that Harry Nelson never owned the property in question; that he was in possession of it about ten months. The defendant testified he thought he paid taxes on the property in 1929 and 1930. He stated that times were plenty tough then and he possibly did not pay the taxes after that time. He testified he was positive that Harry Nelson never paid any taxes on this land.

The testimony shows that the delinquent back taxes for which the property was sold were returned delinquent in the name of Harry Nelson. The evidence shows that John A. Livingstone, defendant, tendered into court $128.38 for the benefit of plaintiffs for said taxes.

We put in a statement made by plaintiffs' attorney to why he filed two trustee's deeds, one correcting the other.

"MR. BEAVERS: No, here is what it was, your Honor. The collector advertised that it was in the out-lots, lot so and so, and I filed an amended deed and had the new trustee put that in to conform. That is what it was—to correspond with what was advertised in the collector's sale."

The plaintiffs contend that the only issue before the court is whether or not defendant, John A. Livingstone, had a recorded deed, mortgage, lease or claim so as to give defendant a claim to the real estate herein involved.

We deem it necessary to decide this issue before taking up the errors alleged in the defendant's brief and argument.

To support this contention on the part of plaintiffs, they cite Section 11169 R. S. Mo. 1939, Mo. R. S. A. Sec. 11169. This section of the statute reads as follows:

"Any person holding any deed of lands or lots executed by the county collector for the non-payment of taxes, may commence a suit in the circuit court of the county where such lands lie, to quiet his title thereto, without taking possession of such lands, and all parties who have, or claim to have, or appear of record in the county where such land or lot is situated, to have any interest in, or lien upon, such lands or lots, shall be made defendants in such suit, and no outstanding unrecorded deed, mortgage, lease or claim shall be of any

effect as against the title or right of the complainant as fixed and declared by the decree made in such cause. * * *''

[855] First, we call attention to the fact that this section of the statute stating the manner of quieting title requires the plaintiff to make parties defendant all persons who have or claim to have or appear of record in the county where such land or lot is situated. This does not limit the defendant's right to a·deed of record and the statements there made in said section of the statute that no outstanding unrecorded deed, mortgage, lease or claim shall be of any effect as against the title as declared by the decree of the court does not mean that a defendant in possession who might have a good and sufficient title by virtue of the statute of limitation could not redeem land sold for taxes or could not defend in an action to quiet title against a plaintiff holding a tax deed which is invalid for any reason.

In Davis v. Johnson, 357 Mo. 417, 208 S. W. 2d 266, this court passed upon the same question as herein raised by plaintiffs. The court states the question thus:

''Defendant says the only question involved on this appeal is whether plaintiff had an interest in the land, at the time this action was commenced, which would entitle him to redeem it from a tax sale under the Jones-Munger Tax Law; * * *''

The facts in the case showed that a former owner had sold the lands in question and, as part payment thereon, had taken back a deed of trust, securing a note for a part of the purchase price; that he, later, sold the note and endorsed the same. The purchaser of the land had. never gone into possession and later abandoned the farm at which time the former owner took possession thereof to protect his endorsement, rented the land for five years, then farmed it himself and finally used it to pasture his cattle. He paid all the interest on the note and paid the taxes until the depression. He was in possession 12 or 15 years prior to the tax sale in 1941 and had built a new barn thereon costing $400.00. He did not receive title, however, but did pay taxes for two years, after the defendant had obtained a tax deed for the same, without knowledge of the sale. The court, in passing upon the law in this case, said:

''Section 11145 provides that 'the owner or occupant of any land or lot sold for taxes, or any other persons having an interest therein, may redeem the same.' (Our italics.) This undoubtedly means an occupant having some interest therein, whose rights might be affected by transfer of ownership. It might include a lessee. It does include the holder of a trust deed. State ex rel. Wilkins v. King, 354 Mo. 501, 189 S. W. 2d 981. Plaintiff was certainly an occupant of the land whose rights would be affected by a transfer of ownership. In fact, his occupation and control, if under a claim of ownership, would have been sufficient to show title by adverse possession. Mrs. Lynn, who had the record title, never exercised any rights of ownership and has

since conveyed the record title to plaintiff. In State ex rel. and to the Use of Crites v. Short, 351 Mo. 1013, 174 S. W. 2d 821, we upheld the right of redemption of a grantee of one who took under an unacknowledged quitclaim deed, although both deeds were made after sale but prior to the time when the purchaser became entitled to a collector's deed. While plaintiff herein did not get a deed until after this suit was commenced, we think he had sufficient interest prior thereto to come within the above-quoted portion of Section 11145 providing who shall have the right to redeem. Plaintiff was an occupant of the land under a claim of right to protect his obligation on an encumbrance equal to the full value of the land. He was attempting to make it pay the interest thereon and he did pay more on the debt than the land produced. As between himself and the Lynns, plaintiff was a surety; and he certainly had rights of subrogation against the security, which they gave for this debt, at least in equity. See Krebs v. Bezler, 338 Mo. 365, 89 S. W. 2d 935, 103 A. L. R. 1177, and cases cited. We hold that plaintiff was entitled to redeem and, therefore, he was a proper party to maintain this action.''

In the case at bar, Commodore P. Armstrong and wife were the record owners, or their heirs at the time the suit was filed herein. In 1919 they had secured a loan from defendant for $750.00 and secured the [856] same by deed of trust on the land. In 1930, under the testimony, they had conveyed this land by warranty deed to the defendant and had surrendered possession thereof to him. The defendant had remained in possession, either actually or through tenants, collected the rents thereon, possibly paid some taxes in the early 1930's, was in possession when the taxes became delinquent for the years 1936 to '41, inclusive, and was in possession at the date of the third sale, by the collector of revenue of Clinton County, to-wit, November 8, 1943, when said land was bid in by a trustee for the county but no title taken thereto. The facts are undisputed that after this tax sale, defendant remained in possession and paid the taxes on said land, which was assessed in his name on the collector's books for the years 1943 to '47, inclusive, and was in possession of the land at the time the county collector made and delivered a tax deed thereto to Robert H. Frost, a successor trustee, May 4, 1948, and was in possession of said land on May 6, 1948, when Robert H. Frost executed his deed to this land to the plaintiffs for the amount of the taxes due at the time of the tax sale, to-wit, $128.38. The defendant had had possession of this land for at least 18 years from 1930 until 1948; had undisputed possession thereof, had paid the insurance on the buildings, had kept the buildings in repair, had rented the premises and collected the rents thereon and had a tenant living in the premises at the time plaintiffs filed this suit. It will be noted further that neither the record owners to-wit, Commodore P. Armstrong and wife, nor their heirs who were made defendants in this case, have

ever claimed any interest in the land involved and the only adverse claim ever made to the defendant herein is the claim of plaintiffs under the tax deed in question.

Thus the evidence shows defendant was in possession of the described land, under claim of ownership prior to the accrual of a lien for state and county taxes and the alleged foreclosure of such lien by the tax sale under which plaintiffs claimed. Under the facts defendant had such possession as to enable him to perfect his title by adverse possession for more than ten years. His rights were undoubtedly affected by the making of the tax deed in question and he, therefore, had the right to challenge the sufficiency of the foreclosure proceedings and the tax deed under which plaintiffs obtained their title.

A party in possession under a claim of ownership has a better title than one who has no title or possession. Johnson v. McAboy, 350 Mo. 1086, 169 S. W. 2d 932, 935, and cases cited therein. Section 11145 R. S. Mo. 1939, Mo. R. S. A. Sec. 11145.

Defendant's first assignment of error is, "The sale of said property at $128.38 was such as to constitute a constructive fraud on him, the value of said property being at least $1,000.00."

We think the testimony is undisputed that the property sold in question was of the value of $1,000.00 or more at the time of the foreclosure for taxes, to-wit, November 8, 1943, and at the time plaintiffs received their deed.

Defendant testified that the property was worth $1,000.00 or more; that he had loaned $750.00 on it in 1919 and that, in 1932, it was worth $1,000.00 and, at the time of the sale, it was worth $1,000.00. The plaintiffs offered no evidence to controvert the fact that the property was worth $1,000.00 at the time of the tax sale. In fact, from the judgment of the trial court, it would appear that the court did not consider this question at all but found for the plaintiffs on the sole ground that the defendant had no record title to the land.

We agree with the defendant's contention in this case that the consideration of $128.38 for property of a reasonable value of $1,000.00 or more was so grossly inadequate as of itself alone to amount to fraud. In J. C. Nichols Investment Co. v. Roorbach, (Mo. Sup.) 162 S. W. 2d 274, the court stated the law:

"The identical question has been ruled by the court en banc in Bussen Realty Co. v. Benson et al., Mo. Sup., 159 S. W. 2d 813, 814. In that case we considered the questions presented by the defendants in the instant case and ruled that a consideration of $11 for real estate of the value of $2,000 was 'so grossly inadequate as of itself alone to amount to a [857] fraud'. Likewise, we think that a consideration of $40 for a lot of the value of $1,000 'is so grossly inadequate as of itself alone to amount to a fraud'."

In Liese et al. v. Sackbauer et al., (Mo. Sup.) 222 S. W. 2d 84, the court held that where the consideration paid at a tax sale was so inadequate as to constitute a constructive fraud and shock the conscience of a court of equity the collector's deed of necessity must be set aside.

In Johnson v. McAboy, supra, it was held that where 40 acres of land worth from $1,000.00 to $2,000.00 sold for $79.05 was so grossly inadequate as to amount to fraud.

The defense of grossly inadequate consideration is not well looked upon in the law. but, as in the case at bar, where the consideration is less than 13% of the actual cash value of the property at the time of the tax sale, we think constitutes such grossly inadequate consideration as to amount to fraud.

Defendant's second assignment of error complaining of the description of the property has no merit.

The tax deed introduced by plaintiffs was prima facie evidence that the property conveyed was subject to taxation at the time assessed, that the taxes were delinquent and unpaid at the time of the sale, and of the regularity of the sale of the premises described in the deed and of all prior proceedings, that the land had not been redeemed and is prima facie evidence of a good and valid title in fee simple in the grantee of said deed. Section 11150 R. S. Mo. 1939, Mo. R. S. A. Sec. 11150.

In Johnson v. McAboy, supra, page 934, the court states the law:

"A prima facie case 'of a good and valid title in fee simple' in plaintiff was made out by the tax deed of November 30, 1940. Section 11150, R. S. 1939, Mo. R. S. A. Sec. 11150. See, also, Delta Realty Co. v. Hunter, 347 Mo. 1108, 152 S. W. 2d 45, 48 (1)."

The defendant relies upon a defect in description under this assignment of error and the burden was on him to establish such facts by evidence, which he has wholly failed to do. Kelley v. Waymeyer et al., 356 Mo. 1043, 204 S. W. 2d 744, 746.

Defendant's third assignment of error complains, "That under Sec. 11165, R. S. 1939, taxes more than five years past due are not collectible and any sale for taxes, more than five years past due is a void sale.".

This assignment of error inferentially does raise a valid objection to plaintiffs' tax deed in this suit.

Under Section 11130, R. S. Mo. 1939, Mo. R. S. A. Sec. 11130, the following law is stated:

"Whenever any lands have been or shall hereafter be offered for sale for delinquent taxes, interest, penalty and costs by the collector of the proper county for any two successive years and no person shall have bid therefor a sum equal to the delinquent taxes thereon, interest, penalty and costs provided by law, then such county collector shall at the next regular tax sale of lands for delinquent taxes, sell same

to the highest bidder, and there shall be no period of redemption from such sales. No certificate of purchase shall issue as to such sales but the purchaser at such sales shall be entitled to the immediate issuance and delivery of a collector's deed. '' Davis v. Johnson, supra.

In the case at bar plaintiffs' tax deed shows on its face that it was given by the collector of revenue for a purchase at a third offering at the tax sale and, therefore, there was no period of redemption and the trustee, W. T. Harbison, who purchased the land for $128.38, was entitled to a deed at that time, to-wit, November 8, 1943. The collector did not actually make the deed under this sale until May 4, 1948, which was more than four years from the date of sale and the time that the statute provides the deed should have been made.

Section 11137 R. S. Mo. 1939, Mo. R. S. A. Sec. 11137 is as follows:

''In all cases where lands have been or may hereafter be sold for delinquent taxes, penalty, interest and costs and a certificate of purchase has been or may hereafter be issued it is hereby made the duty of such purchaser, his heirs or assigns, to cause a deed to be executed and placed on record in the proper county [858] within four years from the date of said sale: Provided, that on failure of said purchaser, his heirs or assigns so to do, then and in that case the amount due such purchaser shall cease to be a lien on said lands so purchased as herein provided.''

It is provided in Section 11130 R. S. Mo. 1939, supra, that if any lands or lots are not sold at the third offering the collector need not again advertise or offer the lands for sale oftener than once every five years after the third offering and that such offering will toll the operation of the statute of limitations.

In State ex rel. v. Marburger, 353 Mo. 187, 182 S. W. 2d 164, 165, the court makes the following statement of law:

''The record owner continues the owner of the legal title and has the right of redemption which he, or any other persons having an interest in the land, may exercise by application therefor and by making certain required payments at a time within four years immediately succeeding the tax sale and prior to the exercise, after the lapse of the two years immediately succeeding the sale, of the right of the certificate holder to have the legal title transferred to him. Section 9956a, Laws of Missouri 1933, p. 437, Mo. R. S. A. Sec. 11145; Hobson v. Elmer, supra. The legal title does not vest in the holder of the certificate of purchase by virtue of the tax sale until the sale is consummated, that is, until (there being no redemption) the holder shall have exercised his right to have the legal title transferred to him.''

This same case holds, on page 166:

''Under the Jones-Munger Act as now effective no certificate of purchase is issued to a bidder upon the first and second offerings

unless his bid is equal to the delinquent taxes with interest, penalty and costs; and there is now no right of redemption from a sale upon the third offering, Section 11130, supra; * * *

"* * * as we have stated, there is now no right of redemption from a sale upon the third offering, but such a sale is consummated by the immediate issuance and delivery of a collector's deed to the purchaser."

In Bullock v. Peoples Bank of Holcomb, 351 Mo. 587, 173 S. W. 2d 753, 760, the court states the law thus:

"The tax deed was not recorded within four years from the date of the tax sale, as required by Sec. 11137, but one day too late. That sale was on November 12, 1935. The four years ended on Saturday, November 11, 1939, which was Armistice Day. It and the next day, Sunday, were both public holidays. * * * The deed should have been recorded on or before that day, and since it was not, defendant's lien or title rights thereunder expired, as Sec. 11137 provides and the plaintiff contends."

Under this holding by this court the county had lost its right to acquire a deed under the tax sale because it did not demand and receive the deed to the land in question within four years from the date of sale and therefore, the tax deed made on May 4, 1948, to Robert H. Frost, trustee for the county, was void and the deed made to plaintiffs, under which they claim herein, was likewise void and conveyed no title to the premises. These facts appear upon the face of the petition filed by plaintiffs and, therefore, we hold that their deed was void.

■ If perchance this error has not been properly raised in defendant's assignments of error, it being a plain error appearing upon the face of the petition and this court believing that substantial justice requires us to consider it, we can do so under Supreme Court Rule No. 3.27.

Justice certainly requires us to pass upon this question for, in this case, plaintiffs seek to deprive the defendant of his rights to the property for a consideration of less than 13% of the actual market value. The collector of revenue permitted defendant to pay the taxes on this property from 1943 to 1947 without informing him that the property had been sold and these taxes were assessed in the defendant's name; the county got the benefit of these taxes and the evidence further shows that during that time defendant paid the city taxes and made repairs on the buildings and kept the [859] premises in repair. Under the circumstances we think it justifies the court to decide this point which, we hold, is fatal to the title.

Assignment of error numbered four on the part of defendant complaining that the sale was not made on the first of November is not supported by any evidence and, therefore, is denied.

It appearing from the facts that defendant tendered the back taxes, interest and costs into Court at the trial, it is the order of this court that the judgment be reversed and the cause remanded with directions to enter judgment for defendant. All concur.