Theresa E. BAXTER, Plaintiff-Appellant,

v.

Leo VASQUEZ et al., Defendants-Respondents.

No. 34745.

Missouri Court of Appeals,
St. Louis District,
Division One.

Sept. 18, 1973.

Motion for Rehearing or Transfer Denied
Oct. 10, 1973.

Application to Transfer Denied
Dec. 10, 1973.

Norman W. Drey, Jr., Klamen, Summers, Wattenberg & Compton, A. G. Schumacher, Andrew F. Tegethoff, Jr., Clayton, for plaintiff-appellant.

Boyle, Priest, Elliott & Weakley, St. Louis, for defendants-respondents.

DOWD, Chief Judge.

A quiet title action. Plaintiff brought this action to quiet title to 92.7 acres of land in north St. Louis County. Defendant counter-claimed asking the court to quiet title to 300 acres which he asserted encompassed the 92.7 acres claimed by plaintiff. Both parties asked for damages. The Circuit Court entered judgment for defendant on his counter-claim and adjudged the claims of plaintiff to be "invalid, groundless, and void." The court also found no evidence upon which to grant defendant monetary relief. Plaintiff has appealed.

Plaintiff's petition asserts title in plaintiff based both upon a claim of adverse

possession and upon a series of deeds (Conveying the property among Paul Aubuchon, his heirs, and plaintiff and her husband). Defendant claims title to the 300 acres based upon a chain of title ending with Hugo and Alvena Essen and a conveyance to defendant from the Essens.

The 92.7 acres claimed by plaintiff lies in Township 47 North, Range 5 East in St. Louis County being northwest of Aubuchon Road. This land would lie in Survey 147 of St. Ferdinand Common Fields if that survey were projected northwest of Aubuchon Road to the Missouri River.

Paul Aubuchon had farmed some of the land which plaintiff is now claiming and had removed timber from it about twenty years prior to the time plaintiff instituted this action. The Teson family had been farming it lately and had been paying rent to plaintiff. Paul Aubuchon never lived on the 92.7 acres nor had he fenced any of it.

Elmer Teson testified that he lives in this area and that he considered the 92.7 acres to belong to plaintiff. Defendant had used his construction equipment to clear some of the acreage at the request of Elmer Teson but had never sent a bill for this work.

Donald Teson gave testimony essentially equivalent to that of his brother Elmer. In addition, he stated that, while defendant was clearing the land at his brother's request, defendant told him that he could plant anywhere because defendant owned all this land.

Plaintiff's son, Clarence Baxter had used the land claimed by plaintiff as a dump for scraps from his nursery business. He had been on the land an average of once or twice a week since 1950 and had cut timber twice in that time. He and his father had surveyed the land, but he had not retained their calculations nor was he a qualified surveyor.

Lloyd Wurdack, plaintiff's witness and vice president of American Title Insurance Company, testified that he had examined the title from 1950 to the present relative to a deed dated September 26, 1950, from the heirs of Henry Aubuchon to Mr. and Mrs. C. Gordon Baxter (plaintiff and her deceased husband). He stated that a deed from Hugo and Alvena Essen to the defendant had been recorded on October 18, 1950, and the land conveyed by that deed included the land described in the deed to the Baxters. In response to a question by the court, plaintiff's attorney also stated that the land in the deed to defendant included the land claimed by plaintiff.

On cross examination Mr. Wurdack testified that the deed to the Baxters described the land as being a tract bounded on the east by the center line of Aubuchon Road and on the north by the north line of Survey 148. Defendant's attorney adduced evidence consisting of a survey prepared by the county engineer showing that the lines of the surveys mentioned end at the low water mark of Cowmire Creek and do not continue to the Missouri River leading to the conclusion that the deed to the Baxters contained a misdescription.

There was additional testimony of county government personnel to effect that C. Gordon Baxter had applied, in 1955, for a permit for a land-fill on the 92.7 acres. Pursuant to this request, his name had appeared as owner in the notices published in the newspaper and those posted on the property.

In addition to the above, plaintiff's evidence consisted of real property tax receipts for the 92.7 acres for the years 1950 through 1968; the probate records of the estates of both Paul Aubuchon and Martin Aubuchon; various aerial photographs upon which Clarence Baxter had made notations; several deeds evidencing conveyances from Henry and Louise Aubuchon to the Baxters and between the Baxters and the heirs of Paul Aubuchon; a court file from the case of Essen v. Adams, which case had also involved the land in question here (this was admitted only as it applied to Paul Aubuchon).

Mr. John Gerlach, an employee in the Recorder of Deeds Office of St. Louis County testified for the defendant. He brought the official books and records with him. He read into the record the contents of several deeds and patents contained in these books. The purpose of this evidence was to show a chain of title to the land in question ending in Hugo and Alvena Essen. Also, the deed from the Essens to defendant was read into the record. All the deeds and patents were referred to by the book and page number. The court granted defendant's attorney permission to provide copies of the deeds which would, once identified be substituted for the books as the defense exhibits. The court later admitted these exhibits into evidence after a showing of identification.

Paul Vasquez, defendant's cousin, and Fred Kruse both were employed by defendant. Both testified to their familiarity with the land which plaintiff was claiming and their having been on the land several times. Both stated that they had seen neither private property signs posted on the 92.7 acres nor a road leading back into that property from Aubuchon Road.

Defendant testified that he was not claiming the land shown in Exhibit 1 which consisted of 9.64 acres between Aubuchon Road and the low water mark of Cowmire Creek and opposite Surveys 146 through 150. He stated that he had been sued for the taxes due on the 92.7 acres and had paid those taxes. Defendant also testified that he had never seen anyone farming the 92.7 acres except the Tesons; that he had given permission to them to farm that land; that he had not billed them for the clearing because he was merely clearing his own land; that he had not known that they were paying rent to plaintiff for the use of this land until the commencement of this action; and, that no person has ever told him he could not be present on this property.

Additional evidence offered by the defendant was the March 1, 1944 entry in the probate file of Paul Aubuchon showing that he was declared of unsound mind and incapable of managing his own affairs. Plaintiff's attorney then established that this same file contained an inventory dated March 9, 1944, which included an entry of a 118 acres tract in Survey 147 of the Common Fields of St. Ferdinand and that no objection to this inventory was indicated in that file.

At the close of defendant's case, the court took the case as submitted on memoranda of the parties. Thereafter, the court prepared extensive findings of fact, conclusions of law, judgment, order, and decree. We will, for the sake of brevity, include only those portions necessary for this appeal and for the precedential value of this case.

The court's statement of the case includes the following:

1. Plaintiff and her late husband procurred from Paul Aubuchon's heirs, individually, warranty deeds to their respective interests in the land which Paul Aubuchon owned east of Aubuchon Road and the 92.7 acres lying within projections made by Paul Aubuchon's surveyor traversing Essen's land in Township 47 North, Range 5 East. These deeds were recorded September 26, 1950.

2. Plaintiff then exchanged deeds with Henry Aubuchon, one of Paul Aubuchon's heirs, and his wife. Plaintiff and her late husband conveyed all the property which they received pursuant to the above mentioned deeds to the Aubuchons and took in exchange two deeds from the Aubuchons which effectively divided that land into the land east of Aubuchon Road (contained in the first deed) and the 92.7 acres west of Aubuchon Road (contained in the other deed).

3. Essen was farming all arable portions of his 1400 acres, including the 92.7 acres, and the Baxters never attempted to interfere with his use.

4. Essen conveyed 300 acres to defendant which included the 92.7 acres. The deed was recorded on October 18, 1950. (This deed was dated October 2, 1950).

The court made the following findings of fact:

1. Essen was the title holder of record of approximately 1400 acres of land in Township 47 North, Range 5 East in St. Louis County by virtue of the documented transactions, the validity of which are uncontested, minutely detailed in the record.

2. Essen was title holder in possession of the land described in Essen's deed to defendant dated October 2, 1950 (with some minor exception to be later noted).

3. Aubuchon is not shown to have committed any act to oust Essen of his possession of any part of the 1400 acres nor to have occupied the land exclusively, hostilely, and continuously for the statutory period. His "sporatic sorties" onto the land lying west of his property did not constitute the elements necessary to show adverse possession.

4. Aubuchon paid no taxes on the land in Township 47 North, Range 5 East.

5. The listing of the 92.7 acres in Aubuchon's estate inventory is unsupported by other facts in evidence and, coupled with Aubuchon's failure to claim the land, does not constitute competent and substantial evidence.

6. Defendant by his acts of farming, grading, and giving permission to the Tesons to use the land, was in continuous possession of the 300 acres, including the 92.7 acres plaintiff claimed.

7. Plaintiff's witness, a title examiner, testified that the 300 acres defendant claimed included the 92.7 acres plaintiff claimed.

8. No evidence of damages is shown.

The court proceeded to set out its conclusions of law. These conclusions state and define the essential elements of adverse possession, i. e., the possession must be hostile and under claim of right, actual, open and notorious, exclusive, and continuous. The court then stated that the plaintiffs failed to meet the burden of proving their title by adverse possession, pointing out:

1. Plaintiff's failure to show defendant's actual knowledge of plaintiff's claim in opposition to his title.

2. Plaintiff's failure to show *exclusive* possession or acts of ownership of sufficient frequency to apprize defendant that his possession had been interrupted and his title endangered.

3. Plaintiff's failure to establish adverse possession by Paul Aubuchon.

4. Plaintiff's failure to show any ouster of defendant from any portion of his land.

Finding all claims of plaintiff to be invalid, the court entered judgment for defendant. It found Hugo and Alvena Essen to be the owners of the land conveyed to defendant and defendant to be the owner in fee simple of that land with the exception that the court found the deed from the Essens to contain a misdescription in that it described the land as being bounded on the southeast by the center line of Aubuchon Road. The court found the evidence insufficient to determine ownership of the land lying between Cowmire Creek and Aubuchon Road and reformed that deed to show Cowmire Creek to be the boundary of defendant's land. The court entered a judgment in favor of the defendant quieting title to the land described in the judgment.

Finally, the court enjoined plaintiff and all persons claiming under her from making any claim upon the land described.

Plaintiff's contention that the trial court's judgment, is unsupported by the record and contrary to the weight of the evidence is without merit.

This court reviews a court tried case upon both the law and the evidence. The judgment of the trial court will not be set aside unless clearly erroneous and due regard will be given the trial court's opportunity to judge the credibility of the witnesses. Rule 73.01(d), V.A.M.R. We have reviewed the evidence and find the extensive findings and conclusions set out by the trial court to be supported by the evidence. The judgment is not clearly erroneous.

Where each party to a quiet title action is claiming title against the other, the burden of proof is upon the respective parties to prove better title than the other. Gaskill v. Cook, 315 S.W.2d 747 (Mo. 1958). And the burden of proving the existence of all the elements of adverse possession is upon the party claiming title by adverse possession. Wykle v. Columbo, 457 S.W.2d 695 (Mo.1970).

As to plaintiff's claim of title by adverse possession, plaintiff must prove that her possession was hostile and under claim of right, actual, open and notorious, exclusive, and continuous. We find the court's conclusion that plaintiff failed to meet this burden is supported by the evidence and is not clearly erroneous. Additional support from Missouri case law may be found in Crispen v. Hannavan, 50 Mo. 536 (1872) [the true owner must have notice of a paper claimed to give the color of title necessary to support adverse possession]; McVey v. Carr, 159 Mo. 648, 60 S. W. 1034 (1901) [pasturing of land and payment of taxes do not constitute possession for the purpose of establishing title by adverse possession]; Crowl v. Crowl, 195 Mo. 338, 92 S.W. 890 (1906) [possession must be hostile to the legal title]; Conran v. Girvin, 341 S.W.2d 75 (Mo.1961) [payment of taxes and cutting timber, while evidence of a claim of ownership are not sufficient to establish title by adverse possession]; and Brown v. Evans, 182 S.W.2d 580 (Mo.1944) [occasional entries or temporary use of property are insufficient to establish the actual possession necessary for adverse possession].

As to plaintiff's claim based upon chain of title, it appears that the trial court made a meticulous investigation into the evidence as to chain of title provided by both parties and concluded that defendant had title. We are unable to find any fault with the court's determination. Plaintiff's assertion on this appeal that the defense exhibits as to the chain of title were not in evidence since the copies were not filed until after judgment is of no avail. It is clear that the deeds and patents relied upon by defendant were read into the record, and the permission to file copies was merely for the convenience of the defendant and the court. In addition, since all the information necessary to locate these deeds and patents was in the record, it cannot be said that there was insufficient evidence in the record from which the chain of title claimed by defendant could be determined.

Plaintiff also asserts that the judgment of the trial court is erroneous in that: (1) the court exceeded its jurisdiction since the counterclaim was not restricted to the land in plaintiff's petition and all necessary parties were not before the court; and (2) the relief granted was not sought in the petition.

A cross-petition alleging ownership in the defendant states a cause of action. Baker v. Lamar, 140 S.W.2d 31 (Mo. 1940). This is true even where defendant's answer is a general denial. Seiser v. Maggard, 457 S.W.2d 678 (Mo.1970). And where a defendant sets up title in himself in a counterclaim or cross-claim, he is entitled to an adjudication of his existing title. *Seiser,* supra.

Here, the defendant has claimed superior right, title, and interest in the 300 acres. It has been conceded at trial by both plaintiff's witness, Wurdack, and plaintiff's attorney that the 92.7 acres claimed by the plaintiff were included in

the 300 acres claimed by the defendant. Therefore, plaintiff's claim is a cloud upon defendant's title, and defendant is entitled to set up title in himself and have his claim adjudicated. Defendant is not required to rely on plaintiff's statement in plaintiff's petition but may state his own claim, in his own words. *Seiser,* supra. In a quiet title action, the respective parties are required to show title superior to the other party, not superior to the whole world. *Gaskill,* supra. Therefore, defendant's counterclaim that he had superior title to plaintiff with regard to the 300 acres, a portion of which plaintiff was claiming, was proper, and the plaintiff and defendant were the only parties necessary for this adjudication.

 Plaintiff contends that the heirs of Paul Aubuchon were necessary parties in that the court judgment dealt with his probate estate. This contention is without merit. Plaintiff, by the exchange of deeds with those heirs, became the only person interested in and affected by the court's determination that the entry in the inventory of Paul Aubuchon's estate was erroneous. The heirs of Paul Aubuchon were not, therefore, necessary parties.

Finally, plaintiff alleges that the court erred in granting relief not sought by defendant. The court determined that the eastern boundary of the defendant's land was Cowmire Creek and not the centerline of Aubuchon Road. During the trial, defendant renounced any claim to the land between Cowmire Creek and the centerline of Aubuchon Road, and the court found there was insufficient evidence to show the ownership of that land. Based on this, it was within the jurisdiction of the court to reform the defendant's deed from Essen to include Cowmire Creek as the eastern boundary and to quiet title in defendant to the land west of Cowmire Creek even though this was less than defendant sought by his answer.

The court did not determine Essen to be the title holder to fourteen hundred acres but merely found him to be the title holder of the land contained in his deed to the defendant, with the above noted exception, as part of its determination of the chain of title ending in defendant. Therefore, defendant was the only party necessary for this reformation and title determination.

We have reviewed all the cases cited by the plaintiff and find they do not provide any basis for reversal of the trial court's judgment.

We agree with the decision of the trial court. There was a firm, substantial foundation for the trial court's finding that the defendant held superior title to the plaintiff with regard to the land delineated by the trial court.

The judgment is affirmed.

CLEMENS and McMILLIAN, JJ., concur.