Lionel C. MOISE and Anna Mae Moise, his wife, Plaintiffs-Respondents,

v.

Paul J. ROBINSON and Hazel J. Robinson, his wife, et al., Defendants-Appellants.

No. 36284.

Missouri Court of Appeals, St. Louis District, Division Three.

Dec. 30, 1975.

Robert C. Dodson, Pannell, Dodson & Robinson, Festus, for defendants-appellants.

Samuel Richeson and Nicholas G. Gasaway, Richeson, Roberts, Wegmann, Gasaway, Stewart & Schneider, Hillsboro, for plaintiffs-respondents.

SIMEONE, Presiding Judge.

This is an appeal by defendants-appellants, Paul J. Robinson and his wife, Hazel, from a judgment entered by the circuit court of Jefferson County quieting title to certain land in the plaintiffs-respondents, Lionel C. and Anna Mae Moise, his wife, adjudging that the defendants-appellants have no interest in said premises. For reasons hereinafter stated, we affirm the judgment.

Plaintiffs, Mr. and Mrs. Moise, on June 22, 1972, filed their petition against certain persons [1] including the defendants Robinsons, seeking to quiet title to a certain parcel of land in Jefferson County consisting of five acres [2] "more or less." The Robinsons counterclaimed also seeking to quiet title. Trial was held in January, 1974.

The sole issue presented by this trial and appeal is who has, as between the Moises and the Robinsons, a superior "title" to the disputed five-acre tract in Jefferson County. Both parties are innocent; both have sincere claims; the Robinsons have been paying taxes on the disputed "property" since 1954 under a collector's deed dated February 28, 1962, until the date of suit, 1972; the Moises purchased the property in good faith from the Halahans when they saw a "for sale" sign on the property in 1966. They claim under a deed from the Halahans which describes the property in detail and which conforms to the description of the property in an original deed dated June 27, 1930 from Arthur J. and Lily M. Brewster to Iowa Lee Roberts.

One or the other of these innocent parties must suffer, and we are faced with the unpleasant and difficult task of determining who has a "better" title between them. The task is not an easy one for we are bound by the facts which can only be described as a gallimaufry.

The issue between the parties arises because the collector of Jefferson County over

1. Including "Iowa Lee Roberts" (a/k/a Irwin Roberts) and Harry E. Roche.

2. This dispute involves the question, as between the Moises and the Robinsons, who has superior title to the disputed land. The Robinsons were the only parties to respond to the petition filed by the Moises. The tract which the Moises claim is described in the deed they received from their immediate predecessor, John A. and Helen Halahan, a/k/a John A. and Helen Holahan, dated July 27, 1965, as follows:

"Part of Lot Two (2) of the Southwest quarter of Section 18, Township 40 North, Range 3 East, described as follows: Beginning at a point on the North line of said Lot Two (2), which is located 825 feet West of the Northeast corner thereof, thence South and parallel with the East line of said Lot Two (2) to the North line of a 30 foot public roadway; thence Westwardly along the North line of said road, to a point 990 feet West of the East line of said lot; thence North to the North line of said Lot Two (2), and thence East with said North line 165 feet to the place of beginning, containing 5 acres more or less."

The deed on which the Robinsons rely—a collector's deed dated February 28, 1962 (erroneously referred to in appellants' brief as October 31, 1961)—describes the property to which they claim title as "Pt. Lot 2 SW ¼, Section 18, Township 40, Range 3." No acreage is shown on this collector's deed.

the years issued five separate collector's deeds to certain property which both parties claim. In order to understand some of the complicated facts, so that we may resolve the issue according to law, it is necessary to set them forth in some detail.

On June 27, 1930, Arthur J. and Lily M. Brewster, by general warranty deed, conveyed to "Iowa Lee Roberts" and "her"[3] heirs and assigns a tract of land in Jefferson County described in the deed as follows:

"Beginning at a point on the North Line of Lot Two (2) of the Southwest Quarter of Section Eighteen (18) in Township Forty (40) North in Range Three (3) East, 825 feet west of the North East corner of said Lot 2; Thence South and parallel with the East line of said lot to the north line of a 30 foot Public Roadway; thence westwardly along the North line of said Road to a point 990 feet West of the East line of said lot; thence North to the North line of said lot; thence East with said North line, 165 feet to the place of beginning, and containing 5 acres more or less."

Over the years, between 1946 and 1964, five collector's deeds were executed conveying to various persons Part of lot 2 in the southwest quarter, section 18, Township 40, Range 3. These deeds are as follows:

1. On November 4, 1946, the collector of Jefferson County conveyed by collector's deed "5 acres-Pt. lot 2 SW ¼, Sec. 18, Twp. 40, R. 3" to John Esther of Kimmswick, Missouri. This deed recited that whereas the taxes on the above property for the years 1939–1945 were "returned delinquent in the name of Irwin Roberts" the property was sold to John Esther.

2. The second collector's deed was made on December 8, 1947. This deed recited that whereas Harry E. Roche produced a certificate of purchase for the sale of property returned delinquent in the name of Irwin Roberts, for taxes due 1940 through 1944, the property described as "Part of Lot

3 [?] of the Southwest quarter of Section 18, Township 40, Range 3, containing 5 acres" was conveyed to Harry E. Roche.

3. The third collector's deed, made October 23, 1956, conveyed to R. J. Liebe "Pt Lot Two (2), SW ¼ Section Eighteen (18) Township Forty (40), Range Three (3) Containing 55 acres [?]" for taxes delinquent in the name of Harry E. Roche (not Roberts) for the years 1949 through 1953.

4. The fourth such deed was to the appellants Mr. and Mrs. Paul J. Robinson. This collector's deed conveyed on February 28, 1962, "Pt. Lot 2 SW ¼, Section 18, Township 40, Range 3" to the Robinsons because of delinquent taxes for 1954 through 1958 on land in the name of Harry E. Roche. It is to be noted that no acreage is shown on the deed. This is the deed upon which the Robinsons claim their title to the disputed property.

5. The fifth deed, from which the Moises eventually obtained their title, was a collector's deed conveying "5 Acres—Pt Lot 2, SW ¼ in Survey # 3053, Section 18, Twp. 40, R 3, School District R–2, Road District # 55" to August D. Mastis and Norma M. Mastis. This deed was executed because of nonpayment of taxes on said property in the name of Irvin [not Irwin] Roberts for the years 1956 through 1960. The property was purchased at public sale by Walter C. Lewedag. This deed was made on February 29, 1964.

In 1966, the plaintiff, Mr. Moise, saw a "for sale" sign on a tree in front of the property now claimed by the Moises. The sign read: "5 acres $600, John Holahan, 2918 Lemp Ave., St. Louis, Mo." Mr. Moise took the sign down and "contacted the man and bought it." Mr. and Mrs. Moise received a general warranty deed from "John A. Holahan, a/k/a John A. Halahan and Helen I. Holahan, a/k/a John A. Halahan [sic]." This deed was dated July 27, 1966 and conveyed to Mr. and Mrs. Moise "Part

---

3. Both parties have tried and briefed this case on the assumption that Iowa Lee Roberts is the same person as Irwin or Irvin Roberts, the delinquent taxpayer.

of Lot Two (2) of the Southwest quarter of section 18, Township 40 North, Range 3 East, described as follows:" [then followed the exact description of the land as conveyed in the Brewster deed to "Iowa Lee Roberts"].

The Halahans had, on July 9, 1964, received a quit claim deed from August and Norma Mastis.[4] They, of course, had received the fifth collector's deed in February, 1964. The deed from Mastis to Halahan conveyed "5 acres Part lot 2 SW ¼ in section 18, township 40 Range 3, School district R–2, Road district 55 [5]—beginning" [then followed the exact description as conveyed in the Brewster deed to Iowa Lee Roberts]. The Halahans in turn conveyed the same description of the property to the Moises on July 27, 1966, except the beginning words "5 acres" were not used.

Mr. Moise met Mr. Halahan in St. Louis. "[W]e went out there and looked [the property] over, and then we came over to the abstract company. That's where we closed the deal. . . ."

The land purchased by the Moises is adjacent to land they purchased in 1952. There is no dispute that the Moises own the land purchased in 1952. The land which is the subject of this controversy is "very hilly and rocky, but it was a good recreation place for us [Moises] at the time we bought it." There were no improvements on the land obtained from the Halahans, but the Moises "took care of it and put up different things and used lumber off of it. . . ." They cut trees, firewood and "things like that" and also had the land surveyed. Mr. Moise testified that, although he met the Robinsons in St. Louis, he never saw them on the disputed property. From 1967 through 1973, Mr. and Mrs. Moise have paid, to the county collector, real estate

taxes on property described on the tax receipts as "PT LOT 2 SW ¼, Sch. Dist. R–2, Rd. Dist. 55, Sec. 18, Twp. 40, Rng. 3, A. 5."[6]

Prior to the institution of this action to quiet title by the Moises, they obtained a quit claim deed dated May 3, 1972, from John and Pauline Esther, the grantees of the first collector's deed. On May 5, 1972, they also acquired a quit claim deed from R. J. Liebe, the grantee of the third collector's deed in 1956. These quit claim deeds described the land exactly as that described in the Halahan's deed to the Moises and the Mastis' deed to the Halahans. Each of the deeds recited that "[i]t is the intent of grantor[s] to convey all that right . . . acquired in that certain Collectors deed. . . . ." However, the Moises did not obtain any quit claim deed from Harry E. Roche.

At trial, Mr. Moise testified that he had a "title run" on the property. The "certificate of title" relating to the land described in the Mastis to Halahan and Halahan to Moise deeds shows that as of May 7, 1973, the title still was vested in "Iowa Lee Roberts" [not Irwin or Irvin], and subject to any outstanding interests, if any, of the Robinsons and Moises by virtue of tax deeds and quit claim deeds. Mr. Moise also had the land surveyed by a registered land surveyor.

Mr. Mastis, at trial, testified that while he owned the disputed property he never saw Roberts, or Roche or the Robinsons on the land.

Mr. Ronald Dunnegan of St. Paul Title Company, and formerly of the Jefferson County Abstract Company, testified that the property shown on the certificate of title was vested in "Iowa Lee Roberts" as

4. This was the same description contained in the collector's deed to Mastis but different from the collector's deed to the Robinsons; it did not indicate the acreage nor the school and road districts.

5. Mr. Halahan was Mr. Mastis' wife's uncle. He "swapped" the five acres that Mastis

received from the collector for "some other ground down there in Southern Missouri."

6. The 1972 and 1973 tax receipts showed the legal description as "Pt Lot 2 SW QTR R2 55 5 AC."

of May, 1973, subject to any outstanding interests. He also testified that he "can't say" that the "series of [five] tax deeds" "are [sic] directly on this property" because the legal descriptions are "indefinite." He testified that all of the descriptions on the five tax deeds were "basically" the same, but that his company would not insure the title because the description contained "in those five tax deeds"[7] does not "meet the standards required by" the company. They are "actually indefinite, and the property could not be located." He testified that the description of the property contained in the deeds from Mastis to the Halahans, from the Halahans to the Moises, and the quit claim deeds from the Esthers to the Moises and from Liebe to the Moises were the same. The descriptions in all these deeds were by metes and bounds, and were the same as the legal description in the deed from the Brewsters to Iowa Lee Roberts in 1930.

The defendants' evidence consisted of the testimony of Mr. Paul J. Robinson. He testified that he purchased the five-acre tract of land in 1959 and received a collector's deed; that he paid the back taxes from 1954 to 1959 and has paid taxes every year since then, including 1972. He identified the tax receipts that he received upon the payment of taxes from 1959 through 1972.[8] He testified that he went onto the property "[a] couple or three times a year," to "target practice" with a "pistol." He never put up any fences or improved the property, and never cut timber or grass or "anything." Over the years, he never saw the Moises. He testified that one time in the early '60's, he "signed an easement for the State Highway to one twelth [sic] of an acre off of the land when they built [highway] 'WW' and another time I was out with a shade tree from St. Louis [sic] to give them the right-of-way. They said they couldn't find nobody but me, and I assigned the right-of-way for them to cut the underbrush and so forth from under the high line." He admitted that he never had a certificate of title but did receive a collector's deed to "Pt. Lot 2, Southwest ¼, Section 18, Township 40, Range 3."

Following the hearing, the trial court entered its undated order and judgment. The court found that Mr. and Mrs. Moise "are vested with fee simple title in and to real estate" described in the petition and deeds from Mastis to Halahan to the Moises and in the quit claim deeds from Esther and Liebe. The court further found in favor of the Moises on the Robinsons' counterclaim, and adjudged that none of the defendants has any "right, title estate or interest" in the premises, thus quieting title in the plaintiffs, the Moises.

In due time, the Robinsons perfected their appeal to this court. The Robinsons contend that the trial court erred in failing to find that they had superior title because (a) the evidence shows the legal descriptions of all of the collector's deeds are basically the same, (b) they have paid taxes on the property for the years 1954 through 1958 and have received a collector's deed which extinguished the rights of Esther, Roche and Liebe (who had received prior collector's deeds), (c) they paid the real property taxes from 1959 to 1972 and, hence, the collector's deed to Mastis in 1964 is invalid, and (d) since the Mastis' deed is invalid, the Halahans' deed to the plaintiffs, Moises, is

---

7. Including the collector's deed to Mastis from whom the Halahans acquired title, who in turn conveyed the property to the plaintiffs—the Moises.

8. The tax receipts show the following: 1959 —taxes paid by Paul J. Robinson. Owner— R. J. Liebe [the collector's deed showed that Roche was the delinquent owner, not Liebe]. Description of property shows "Pt Lot 2, SW ¼, Sch. Dist. R–2; Rd. Dist. 55, Sec. 18, Twp. 40, Rng. 3 and *55* [not *5*] A."

1960—same as 1959, except for amount of taxes; 1961—same; 1962—same; 1963— same, except Liebe's name does not appear; 1964—same; 1965—same; 1966—same; 1967—same; 1968—same; 1969—same, except that now the acreage is shown as 5, not 55; 1970—same; 1971—same; 1972—Legal description shown as "Pt Lot 2 SW Qtr. R–2, 55, 5 Acres." This is exactly the same legal description as shown on the tax receipt of Moise, the plaintiff.

also invalid—a grantor can convey no better title than he has.

The Robinsons argue that the collector's deed constituted prima facie evidence of title and, having paid the taxes for 1954 through 1958, the collector's deed they received in 1962 extinguished any interest of Roberts (?), Esther, Roche or Liebe, who had received prior collector's deeds. They rely on § 140.460(2) and *Shaw v. Armstrong*, 361 Mo. 648, 235 S.W.2d 851 (1951) [overruled on other grounds in *Journey v. Miler*, 363 Mo. 163, 165, 250 S.W.2d 164, 166 (banc 1952)], for the proposition that the collector's deed in 1962 and the payment of taxes from 1954 through 1958 extinguished the rights of persons claiming under earlier collector's deeds.

They also argue that since they paid the taxes from 1959 to the date of suit, the Mastis' deed of February 29, 1964 was invalid as the taxes for 1956 through 1960, the years during which the Mastises paid taxes, had been paid by them—the Robinsons. They rely on § 140.530, RSMo 1969, and *Huber v. Pickler*, 94 Mo. 382, 7 S.W. 427 (1888), for the proposition that when a person pays taxes on property under a collector's deed and a later deed is given and such later grantee pays the same taxes, the taxpayer earlier in time has superior title.

They argue too that the Moises' warranty deed from Halahan and the quit claim deeds from Esther and Mastis are of no value because, if the collector's deed to Mastis is invalid, the Mastises can convey no better title than they have to the Halahans and, hence, the Moises acquired nothing, since a grantor can convey no better tile than he has.

■ This is a suit to quiet title by both the Moises and the Robinsons. There are certain general principles relating to suits of this nature. A suit to quiet title is a special statutory action to adjudge the respective estates, titles and interests of claimants in the land. *Lloyd v. Garren*, 366 S.W.2d 341, 344 (Mo.1963); § 527.150; Rule 93.01. In proceedings under § 527.150, the court:

"may hear and finally determine any and all rights, claims, interest, liens and demands, whatsoever of the parties, or any one of them, concerning or affecting said real property, and may award full and complete relief, whether legal or equitable, to the several parties, and to each of them . . . or any one of them . . . ." § 527.150(2).

In these proceedings the court must ascertain and determine the rights of the parties under the pleadings and evidence, grant such relief as may be proper and determine the "better" title, as between the parties to the proceeding, though a title superior to the rights of either party may be held by a stranger. *Johnson v. McAboy*, 350 Mo. 1086, 169 S.W.2d 932, 934 (1943); *Gaskill v. Cook*, 315 S.W.2d 747, 754 (Mo. 1958).

■ Where each party to a quiet title action is claiming title against the other, the burden of proof is upon the respective parties to prove better title than the other. *Baxter v. Vasquez*, 501 S.W.2d 201, 206 (Mo.App.1973); *Johnson v. McAboy*, supra, 169 S.W.2d at 935; *Gaskill v. Cook*, supra, 315 S.W.2d at 754. Plaintiffs are not required to show a title good against the whole world, but only a title superior to the defendant's. *Hall v. Hudgins*, 277 S.W.2d 637, 639 (Mo.1955); *Gaskill v. Cook*, supra, 315 S.W.2d at 754. The question is which has the better title. A claimant must prevail on the strength of his own title and not upon any weakness in the title of the other claimant. *Hunott v. Critchlow*, 365 Mo. 600, 285 S.W.2d 594, 603 (1955); *Hall v. Hudgins*, supra, 277 S.W.2d at 639.

■ This being an equitable action, we are required to review both the law and the evidence and reach our own independent conclusions giving, of course, due deference to the superior opportunity of the trial court to judge the credibility of the witnesses. Rule 73.01(3). We are, however, not to reverse the decision of the trial court unless

we find it to be erroneous. *Baxter v. Vasquez,* supra, 501 S.W.2d at 206.

■ The law relating to the collection of delinquent taxes was adopted in 1933. Laws, Missouri 1933, p. 425 et seq. Known as the Jones-Munger Act, it provides a comprehensive scheme relating to the collection of delinquent taxes. § 140.010 et seq. Section 140.460(2) provides that a deed of conveyance by the collector for delinquent taxes "shall be prima facie evidence" of a good and valid title in fee simple in the grantee. *Shaw v. Armstrong,* supra, 235 S.W.2d at 857. However, while a tax deed is prima facie evidence of title, this does not prevent an opponent from offering evidence at variance with the title. *Hartley v. Williams,* 287 S.W.2d 129, 135 (Mo.App.1956).

After thoroughly considering the contentions and authorities of the appellants-Robinsons, we must conclude that the trial court was not erroneous in reaching the result it did.

■ The Robinsons' claim is based on their 1962 collector's deed and the fact that they have paid the taxes for many years. The collector's deed they received described property as "Pt. Lot 2 SW ¼, Section 18, Township 40, Range 3." This was clearly an incomplete description and fails to describe the land with reasonable certainty and, as such, the deed is void. While the Robinsons rely on § 140.460, RSMo, a tax deed which does not describe the property with reasonable certainty is defective. Cf. § 140.530, RSMo 1969; *Costello v. City of St. Louis,* 262 S.W.2d 591, 595 (Mo.1953); *Sharp v. Richardson,* 353 Mo. 138, 182 S.W.2d 151, 153 (Mo.1944). See *Roth v. Gabbert,* 123 Mo. 21, 27 S.W. 528, 529 (1894), and *Western v. Flanagan,* 120 Mo. 61, 25 S.W. 531, 532 (1894).

In *Western v. Flanagan,* supra, a tax deed describing the land as two acres in the N.W. ¼ of section 6, township 49, range 33 was defective. 25 S.W. at 531. The Robinsons' deed is similar. It does not describe the property conveyed by the tax deed with reasonable certainty. It does not even

show the number of acres. All that it shows is that some part of lot 2 in the southwest quarter, section 18, township 40, range 3 was conveyed. Since the land described cannot be identified with reasonable certainty, it is ineffective to pass an interest. See 26 C.J.S. Deeds § 30 c, pp. 650–651 (1956). Mr. Dunnegan of St. Paul Title testified that he couldn't say that the tax deeds were "directly on this property," because the legal descriptions were indefinite.

This same rationale would, of course, be applicable to all five of the tax deeds, including the deed to Mastis in 1964. That deed, while similarly describing the property, does, however, contain additional descriptions showing the amount of the acreage, the survey and the school and road districts. But although the same rationale is applicable to the Mastis deed as to the Robinsons' deed that the description is ineffective, and although we agree with appellants that a person cannot give a better title than he has, it does not follow that the interests of the Moises are inferior to the interests of the Robinsons. Under the facts, we believe, as did the trial court, that the Moises' claim is superior to the Robinsons'.

■ Although Mastis may not have obtained a good and valid title to the disputed property, yet the deed of the Moises was sufficient in our opinion to constitute color of title to the property.

"It is irrelevant to the issues in this case that none of [the] deeds may have conveyed good title. 'Although the instrument under which color of title is claimed may be actually void and convey no title, if it purports on its face to convey the title to the land in question by appropriate words of transfer it will constitute color of title.'" *Moran v. Roaring River Development Company,* 461 S.W.2d 822, 829–830 (Mo.1970), quoting *Jamison v. Wells,* 7 S.W.2d 347, 348 (Mo.1928).

Plaintiffs possess a general warranty deed buttressed by two quit claim deeds which contain an adequate legal description

of the disputed tract. The deed contains sufficient words of transfer. And, as stated, a deed which purports on its face to convey title to land by appropriate words of transfer constitutes color of title. The plaintiffs' deed satisfies these requirements. The deed identifying the land constitutes color of title and it, together with other evidence, is supportive of an asserted claim of ownership. It has long been the principle that a party in possession of described lands under a claim of ownership and color of title has a better title than one who has a title which is void. *Johnson v. McAboy*, supra, 169 S.W.2d at 935; *Hall v. Hudgins*, supra, 277 S.W.2d at 640.

 There was sufficient evidence for the trial court, based upon the credibility of the witnesses, to conclude that the Moises possessed the land under a claim of ownership and color of title. Mr. Moise testified that "we took care of it and put up different things and used lumber off of it. . . ." We cut "trees, firewood and things like that. . . ." Acts which constitute possession depend upon the facts of a particular case. The nature and location of the property, the uses to which it is put, and all the circumstances must be considered. *Frazier v. Shantz Real Estate & Investment Co.*, 343 Mo. 861; 123 S.W.2d 124, 131–132 (1938). Here the property was rocky and hilly; it consisted of second growth timber and it was adjacent to the land which was purchased by the Moises in 1952, title to which is undisputed.

Hence, the Moises had a deed containing a good, legal description, they had color of title, and they were in possession under a claim of ownership.

 On the other hand, the Robinsons' claim consists of a tax deed which is void and consists of the fact that they have paid taxes since 1954 on a parcel of property described in the deed as "Pt. Lot 2 SW ¼, Section 18, Township 40, Range 3." It is undisputed that the Robinsons paid taxes on some property containing the same general description as in the deed they re-

ceived. But, whatever remedy they may have against the collector, the mere payment of taxes does not create title. *Conran v. Girvin*, 341 S.W.2d 75, 91 (Mo.banc 1960); *Dameron v. Jamison*, 143 Mo. 483, 45 S.W. 258, 260 (1898). The argument of the Robinsons that the collector's deed is prima facie evidence of a good title is without merit since the deed does not describe the property with reasonable certainty. *Western v. Flanagan*, supra, 25 S.W. at 532. And their argument that their deed extinguishes the interests of the grantees of the prior collector's deeds is without merit because this would also be applicable to the Mastis' deed, since the Mastis' deed was subsequent to theirs and would have a similar effect of extinguishing the Robinsons' claim. The contentions of the Robinsons are such, we believe, that they seek to establish their claim on the weakness of the plaintiffs' claim, rather than on the strength of their own.

 Under all the evidence in this record, it appears that the plaintiffs were in possession of the disputed tract under claim of ownership and color of title and thus had a superior title as against the Robinsons. We must conclude, therefore, that the trial court was not erroneous in quieting title to the land claimed by the Moises.

We have read the entire transcript; we have carefully examined each of the exhibits and we have considered the authorities relied upon and the contentions of the parties. Having done so, we are convinced that the judgment of the trial court was not erroneous.

The judgment is affirmed.

McMILLIAN and GUNN, JJ., concur.