Roy POWELL et al.,
Plaintiffs-Appellants,

v.

COUNTY OF ST. LOUIS, Missouri,
Defendant-Respondent.

No. 60160.

Supreme Court of Missouri,
En Banc.

Dec. 19, 1977.

Edwin Rader, Clayton, for plaintiffs-appellants.

Don Williams, Clayton, for defendant-respondent.

FINCH, Judge.

Plaintiffs brought an equitable action seeking cancellation of county collector's deeds issued after tax sales in which lots

which they owned in St. Louis County were sold for unpaid taxes. The suit also sought to quiet title in plaintiffs.

The trial court entered judgment for defendant and plaintiffs appealed to the Missouri Court of Appeals, St. Louis District, which held that under prior cases it would be obligated to reverse the trial court and hold the tax deeds void. The court determined that the result was dictated by a line of cases holding that constructive fraud is established if the consideration paid at the tax sale is so grossly inadequate in comparison with the value of the property conveyed as to shock the conscience of the court. However, it expressed the view that the rule announced in those earlier cases was unsound and that the law on the subject should be reexamined. The case was ordered transferred to this court and we now decide it as though here on direct appeal. We affirm.

Plaintiffs alleged and defendant stipulated that in August 1972 plaintiffs were the owners in fee simple of the 207 tracts in St. Louis County which were described in plaintiffs' petition in this suit.[1] Taxes on all of the tracts were unpaid back to and including those for 1967. A description of each tract, together with information as to taxes, interest and penalties due, was given in the notice of sale of delinquent lands and lots advertised by the collector of St. Louis County pursuant to § 140.170 [2] prior to the delinquent tax sale held on August 28, 29

and 30, 1972. The notice specified that this was the third offering of the lots,[3] all of them having been advertised and offered for sale (but not sold) in the two preceding years pursuant to § 140.240. In each instance the highest bidder for the lots was the Director of Revenue of St. Louis County, acting as trustee pursuant to designation under the terms of § 140.260.[4] One lot was bid in at $663, one at $100, 14 others at figures ranging from $20 to $75, and the remainder for bids ranging from $1 to $10.[5] Collector's deeds conveying the tracts sold were delivered to the trustee and recorded. Plaintiff Roy Powell was present at the tax sale and he bid on some of the lots owned by plaintiffs but he was not the successful bidder as to any of them. His bids were for less than the amount due for taxes, penalties and interest. He did purchase about 10 lots which belonged to other taxpayers.

Mr. Powell, a real estate broker for twenty-one years, testified as to the value in August 1972 of the lots sold which were located in Kinloch as well as those in the Forest Mountain and Westcamp subdivisions. He stated that lots in Forest Mountain and Westcamp were worth at least $375 each and that Kinloch lots were worth at least $375 or $1050 depending on size.[6]

■ Plaintiffs' first contention is that the collector's deeds should be set aside on the ground that the published notice of sale was insufficient. Their complaint is that it specified that the sale would be held under

1. Title was in the individual plaintiffs or in plaintiff Powell Land Company, all of the stock in which was owned by Roy Powell and his wife. These tracts were located in various subdivisions throughout the county. *See* note 6 *infra*.

2. All statutory references are to RSMo 1969 unless otherwise indicated.

3. This was in accordance with § 140.250.

4. Section 140.260 provides that persons designated to bid for and purchase lands or lots sold at third offering pursuant to § 140.250 hold for the benefit of all funds entitled to participate in the taxes against the lands or lots sold. The person acting as trustee is not required to pay the amount bid but the collector's deed issued to him is required to recite the delinquent taxes on the land or lot and the amount due each

taxing authority. The lands are thereafter sold only on order of the county court (in this instance the county council) and the proceeds, after payment of expenses, are distributed pro rata to the funds entitled to participate.

5. Plaintiff does not attack the sale of the lot on which the bid was $663 but does attack the others.

6. Most of the lots involved were in Forest Mountain or Westcamp or in various Kinloch subdivisions. A few were located in other subdivisions not specifically located in the testimony and not identifiable from the name as being in Kinloch. It would appear that Powell did not testify as to the value of lots in these subdivisions.

the provisions of "Section 140. R.S.Mo., 1969 and amendments thereto" without designating the chapter. Plaintiffs argue that such reference was meaningless and made the entire tax sale void. We disagree. Section 140.170 which contains the publication requirements for delinquent tax sales does not provide for or require statement in the published notice of the statutory basis for the sale. Reference thereto was surplusage. Incomplete reference to the statute did not render the sale void. Furthermore, plaintiff testified specifically that he was thoroughly familiar with the provisions of the tax law in question (commonly known as the Jones-Munger Law), that he was not misled by the reference to "Section 140" and that he was actually present at the sale and bid on properties offered for sale. We find no merit in plaintiffs' first assignment.

The principal basis for reversal asserted by plaintiffs is that "defendant St. Louis County cannot legally acquire plaintiffs' property at a tax sale by bidding sums which are so grossly inadequate as to constitute a small percentage of its value because said collector's deeds are void instruments and should be set aside." They rely on numerous cases decided by this court.[7]

The leading case applying the rule relied upon by plaintiffs to sales under Chapter 140 is *Bussen Realty Co. v. Benson*, 349 Mo. 58, 159 S.W.2d 813 (banc 1942). In that case plaintiff received a quit claim deed to an unimproved tract of something over 7 acres in 1931. Taxes for 1929 were unpaid when the property was conveyed and plaintiff did not pay them. In 1934, acting under the Jones-Munger law, the collector sold the tract for $11 (the unpaid taxes then amounted to $10.59). A certificate of purchase was issued to the purchaser. Plaintiff did not avail himself of the two year redemption period but no deed was issued thereafter by the collector to the purchaser because of the threat of suit attacking the sale.

Thereafter, plaintiff filed suit to set aside the sale and enjoin issuance of a collector's deed, relying solely on the asserted inadequacy of the amount bid and paid at the tax sale. The evidence disclosed that the amount paid was less than 1 per cent of the value of the property. The trial court entered judgment for defendant but on appeal the judgment was reversed and remanded with directions to enter judgment setting aside the tax sale for the reason that the sale price was so inadequate as to shock the conscience of the court. The court's opinion traced the development of this standard in cases involving judicial sales in ordinary civil cases and its extension to tax cases. It pointed out that in earlier cases the rule had been that relief could be granted based on inadequacy of consideration only if it was accompanied by other grounds for relief from the judicial sale. However, this restriction gradually eroded until it was established that relief would be granted on inadequacy alone. Analyzing this standard, the court said, 159 S.W.2d at 816: "We find no other expressed reason for this court's application of the rule to tax cases than its refusal to permit property to be so sacrificed as to amount to confiscation."

The court then proceeded to consider whether the rule applied previously to judicial sales in tax cases should be extended to sales under the Jones-Munger law. It recognized that sales under the Jones-Munger law, unlike judicial sales, allowed redemption by the owner if the property was sold at either the first or second offering. However, the court concluded that this right of redemption was afforded simply to grant quick relief from the summary method of sale on notice rather than judicial action and that it did not affect the right to have a sale declared void for fraud based on inadequacy of consideration. It then held that the rule should be applicable to sales under the Jones-Munger law, expressing the view that such ruling would not adversely affect the enforcement of the pay-

7. *Pettus v. City of St. Louis*, 328 S.W.2d 636 (Mo.1959), *Costello v. City of St. Louis*, 262 S.W.2d 591 (Mo.1953), *Liese v. Sackbauer*, 222 S.W.2d 84 (Mo.1949), *Johnson v. McAboy*, 350 Mo. 1086, 169 S.W.2d 932 (1943), *Bussen Realty Co. v. Benson*, 349 Mo. 58, 159 S.W.2d 813 (banc 1942), and *Ellis v. Powell*, 117 S.W.2d 225 (Mo.1938).

ment of real estate taxes. The court declined to establish any definite minimum percentage which would constitute an adequate consideration.[8]

A strong dissent by Judge Leedy, joined in by Judge Ellison, was filed in *Bussen Realty*. That dissent pointed out that the Jones-Munger law "does not contemplate or require that the land shall bring a sum bearing any relation either to its assessed value, or its market value * * *." 159 S.W.2d at 820. The opinion subsequently reasoned, at 821:

"The purpose of the tax sale is to collect taxes, and we judicially know that taxes levied on property generally bear a very slight proportion to its value. The result is that the buyer, under either the old or the new system, receives property of greater value, potentially or actually, than the taxes. The likelihood thereof is one of the incentives for bidding. The California view seems to be apposite: 'The sale is for the benefit of the taxing body and it is expected that the price will bring it out whole. That is the first concern in tax sales *and not that the owner may receive the reasonable value of his property.* If this were required there would be few bidders at tax sales * * *.' (Italics mine.) *R.C.A. Photophone, Inc. v. Huffman,* 5 Cal.App.2d 401, 42 P.2d 1059, 1062."

Concerning the likely effect of the majority opinion in *Bussen Realty,* Judge Leedy warned, at 820:

"In my judgment, the effect of the holding will be to hamper and impede, if not to utterly destroy, the workability of that act by writing into it a requirement not placed therein, either expressly or by fair implication, by the lawmakers; and, indeed, I think directly contrary to the plain provisions thereof."

The rule established in *Bussen Realty* has been followed in subsequent cases. See footnote 7, *supra.* Actually, the rule has been expanded in later cases. *Bussen Realty* dealt with a situation wherein an individual had purchased property at a tax sale. It was extended to purchases by cities in *Costello v. City of St. Louis,* 262 S.W.2d 591 (Mo.1953) and *Pettus v. City of St. Louis,* 328 S.W.2d 636 (Mo.1959). These were cases in which the City of St. Louis purchased at the tax sale as authorized in the Jones-Munger law. In both cases deeds to the city were cancelled for inadequacy of consideration.[9] In addition, the court held in both cases that where the tax deed shows a sale for a grossly inadequate price it is void on its face and the statute of limitations never begins to run against an action to set aside such deed.[10] This was contrary to the view expressed in *Bussen Realty,* 159 S.W.2d at 819, wherein the court said that a purchaser concerned about the validity of his purchase because of the amount of the consideration paid could commence a suit to quiet title or "[o]n the other hand he may do nothing and await possible action by the owner which the statute says must be brought within three years from the recording of the deed, Sec. 11177. Under the circumstances both the purchaser who buys land at a tax sale for occupation and the purchaser who buys for speculation, have reasonable protection."

---

**8.** The court did note that in § 11191, RSMo 1939, the legislature had provided that in certain instances, where Jones-Munger did not apply, all tax sales were subject to judicial confirmation. The statute, although not specifying a minimum price, required the court to approve the amount paid if the bid exceeded fifty per cent of the value of the property. The court did not seek to apply that rule to Jones-Munger, saying that was a question for the legislature, not the court.

**9.** In *Pettus,* the court did reserve the question of whether sale to a governmental unit to which taxes are due constitutes an extinguishment of such taxes and to that extent furnishes consideration in addition to the amount bid at the sale.

**10.** In *Costello,* the deed was recorded September 2, 1941. The suit to set the deed aside was filed June 8, 1951. In *Pettus,* the deeds were recorded October 21, 1942. The suit to set them aside was filed May 9, 1950. The three year statute of limitations contained in § 140.590 did not bar the suits to cancel the deeds.

We have considered the view expressed by the court of appeals that the reasoning expressed in the line of cases starting with *Bussen Realty* is unsound and agree that we should reexamine the law enunciated therein. As the court of appeals noted and as Judge Leedy in his dissent in *Bussen Realty* forecast, the practical effect of these cases is to make it almost impossible to consummate a valid sale of land for delinquent taxes until the accrued taxes, penalties, interest and costs exceed a level of "gross inadequacy," a level not as yet definitely established.

To illustrate, § 137.115, Laws 1973, p. 213, directs that real property be assessed at one-third of actual value. Annual tax rates levied thereon usually are something less than 10 per cent of that appraised value. Hence, annual taxes will be less than 3 per cent of actual value and often will approximate 2 per cent of value. Proceedings to enforce collection must be commenced within five years after delinquency, § 140.160, which means that even if the taxes are not advertised until near the time the statute of limitations would be a bar, the amount involved would be not more than 10 per cent of value. Under decided cases a bid of that amount would be held to be grossly inadequate and the tax deed would be subject to attack as being void. In *Shaw v. Armstrong*, 361 Mo. 648, 235 S.W.2d 851 (1951),[11] this court held that a bid at a tax sale of 13 per cent of the value of the property was grossly inadequate and set the tax deed aside. In *Daniel v. Mollett*, 354 Mo. 50, 188 S.W.2d 54 (1945), the court held that a bid of approximately 20 per cent of the value of the property sold was grossly inadequate. *See also State ex rel. Hartley v. Innes*, 137 Mo.App. 420, 118 S.W. 1168 (1909).

The effect of the foregoing on bidding by a trustee appointed by a county or city under § 140.260 is apparent. That section provides that "if at any such sale any person bid a sufficient amount to pay in full all delinquent taxes, penalties, interest and costs, then the trustees herein designated shall be without authority to further bid on any such land or lots." Thus, the trustee's bid will not exceed the delinquent taxes, etc., possibly 10 per cent of value. If the rule is to be that the sale is void for inadequacy of consideration unless the bid at the tax sale is sufficiently more than 20 per cent of value to be declared by the courts to be "adequate", § 140.260 becomes a worthless authorization. Any deed the trustee receives will be void and, under the rule of *Costello* and *Pettus, supra*, subject to attack at any time.

Such a result completely frustrates the statutory scheme. The statute is obviously designed to allow the governmental agencies to recover the tax monies due by subsequent sale of the properties obtained by the bidding process therein described. Application of the adequacy of consideration standard developed in our cases to Jones-Munger sales as a practical matter engrafts a condition nowhere found in the statute which prevents the agencies from offering any protection to subsequent purchasers, for the trustee can pass no better title than he receives. Under our case law and the inherent restrictions on what the trustee will pay under the statute, the title offered to subsequent purchasers would be void on its face and therefore worthless to the governmental agencies for the purpose for which the land was acquired.

Developments in this case illustrate what the current state of the law as expressed in *Bussen Realty* and similar cases permits and encourages. Taxes on these lots were unpaid beginning in 1967. After remaining unpaid for several years, the 207 tracts were offered for sale twice at publically advertised sales at which bids were required to equal taxes, penalties, interest and costs, subject to a right of redemption by the owner. No sufficient bids were received and none of the tracts were sold. That meant that taxes on those properties continued to be unpaid for the period back to 1967 because plaintiff continued to fail to pay the taxes. Then in 1972 the tracts

---

11. This case was overruled on other grounds in *Journey v. Miles*, 363 Mo. 163, 250 S.W.2d 164 (banc 1952), but the ruling as to gross inadequacy was not disturbed.

were offered a third time. Powell was present at the sale. He was thoroughly familiar with tax sales. He testified that he had more or less specialized in buying property at tax sales for many years. He had purchased the properties in Kinloch at tax sales. Powell bid on some of his tracts offered at this third sale but did not bid enough to equal taxes, penalties, interest and costs. He did, however, bid on and purchase some properties of others being sold for taxes. On many of his tracts he did not bid and there obviously were no other interested bidders except the trustee for the county because many of the sale prices were in the $1 to $5 range. This lack of bidders is understandable even if the sale was conducted in accordance with the applicable sections of Chapter 140. Although the successful bidder may certainly bid more than the amount of the taxes, thereby avoiding the prima facie invalidity of the trustee's deed, he could never be certain that his deed was free from attack for inadequacy of consideration under the doctrine of *Bussen Realty, Costello* and *Pettus, supra.*

If we grant plaintiffs' prayer and continue to apply the rule of *Bussen Realty, Costello* and *Pettus*, we necessarily must hold that the collector's deeds issued to the trustee for defendant in this case will be cancelled and plaintiffs will retain title to the 207 tracts. Taxes delinquent since 1967 will remain delinquent. A lien on the lots for the delinquent taxes will be continued, provided the collector advertises them for sale at least once each five years as provided in § 140.250(3). Meanwhile, unless plaintiffs come in and pay the taxes or they sell to some purchaser who pays them, it is apparent that the county and other funds entitled to participate will not be able to enforce collection until such time as taxes, penalties, interest and costs exceed 20 per cent of actual value by whatever amount this court ultimately determines is sufficient to avoid the "grossly inadequate" characterization. Only then is it likely that a sale which will withstand attack can be made.

The inadequacy of consideration rule was intended to protect the owner from losing his property at a tax sale for a small percentage of the value of the property, not for the purpose of enabling him to avoid payment of taxes due. Actually, it would appear that application of the rule to sales under the Jones-Munger law may be counterproductive. Most people do not want to buy uncertainty and lawsuits. As the foregoing discussion indicates, the lack of bidders and the extremely low bids are directly attributable to our cases which have engrafted an additional requirement that the consideration be adequate but provide no means by which the bidder may determine in advance if the requirement is made.

Simply modifying *Bussen Realty* and subsequent cases by fixing an arbitrary percentage of the value of the property as conclusively adequate would not fully protect the interests involved. Suppose, for example, 25 per cent was deemed adequate in all circumstances. At the outset, the problem of determining the value of the property is inherent. This maintains the element of uncertainty for the prospective purchaser, albeit a lesser risk than under the present state of the law. The purchaser would remain subject to second-guessing by experts and the court at some later date. With this inherent cloud on title, the likelihood of sizeable bids from a substantial number of interested bidders remains low, all of which is to the owner's detriment. Such an arbitrary figure would appear to protect the governmental agencies' interests in recovering tax monies due only if some other bidder is willing to speculate, for the trustee is limited under the law to the amount of the taxes. Thus, if no bidder is willing to speculate with the more sizeable sums required by the fixed percentage, the agencies would remain frustrated in their attempts to collect moneys due. Furthermore, imposition of a precise percentage would be in direct conflict with the provision which allows the trustee to purchase the land for the amount of taxes at the third sale. The amount of taxes due at the third sale simply will not amount to 25

per cent of the value and the trustee's authorization to buy would be effectively foreclosed.[12]

█ The only effective means to protect the interests involved is simply to enforce the law as written and eliminate application of the adequacy of consideration rule to the Jones-Munger law. Under this approach, any purchaser at the third sale would be immune from attack on the grounds of inadequacy of consideration. Thus, the prudent purchaser who satisfies himself that the sale is regular in all other respects may be confident he is receiving a fully marketable title. With this element of uncertainty removed, any price up to the fair market value is a bargain, and more bidders and higher prices are likely. The presence of the trustee, along with the protection offered to his subsequent purchaser, protects the governmental interests because he will insure that the bidding reaches the level of the taxes due. The property owner also can encourage higher bidding while risking only the amount of taxes he owes because any amount of surplus will be paid over to him in any event.

Is there any reason to continue to apply this grossly inadequate consideration doctrine to tax sales under Chapter 140? An examination of its provisions provides no basis for or justification of a requirement that a sale of real estate for delinquent taxes under its provisions must bring a bid of some percentage of value satisfactory to the court before the sale will be sustained. As Judge Leedy said in his dissent in *Bussen Realty*, 159 S.W.2d at 820, the Jones-Munger law "does not contemplate or require that the land shall bring a sum bearing any relation either to its assessed value, or its market value * * *." There is no section in that chapter which so provides, either expressly or by implication. If the legislature had so intended, it is reasonable to assume that it would have so provided. It did just that when it provided in § 11191 RSMo 1939 (now §§ 141.130 and 141.940) that a sale must be confirmed if the bid exceeds 50 per cent of value.

Nothing of that sort appears in the sections relating to sales under Jones-Munger. Instead, the legislature undertook to provide protection for property owners by providing for a right of redemption for a period of two years after a sale on either the first or second offering of the property. Sections 140.240, 140.340. Of course, the landowner could buy at either of those two sales or he could redeem if someone else bought at the sale. However, the legislature recognized that if the property was not sold on the first or second offering and the taxes remained delinquent, other steps would be necessary to secure payment. In § 140.250 it provided that the property should be offered a third time and at that sale it was not required that the amount bid equal taxes, penalties, interest and costs due. Instead, the property is to be sold and conveyed to the highest bidder, regardless of the amount bid, and there is to be no period of redemption. It added § 140.260 to enable counties or cities to have someone bid on and purchase the property and later sell it in order to collect their taxes. Those provisions, we conclude, indicate that the legislature intended such sale to be final and valid, provided the sale met the requirements as to notice, description, etc., specified in Chapter 140, and provided the purchaser complied with § 140.250.

We find support for this conclusion in the language of § 140.610 which provides that in suits involving title to land claimed under a collector's deed executed for nonpayment of taxes thereon, the person attacking the deed shall be required to prove, in order to defeat the title conveyed by such deed, one of several enumerated grounds.[13] None

---

12. The *Bussen Realty* court similarly concluded that it should not attempt to fix any definite percentage of the land as adequate consideration on the basis that this would be a legislative determination. 159 S.W.2d at 819.

13. Section 140.610 provides:

"140.610. Proof by claimant of invalidity of sale

In all suits and controversies involving the title of land claimed and held by virtue of the deed executed by the county collector for nonpayment of taxes thereon, under this tax law, the person claiming by adverse title to such

of the various conditions listed in § 140.610 include inadequacy of the amount bid for the property at the tax sale. We realize that in *Bussen Realty* the court held that the legislature did not by this section intend to prohibit suits attacking tax deeds on other grounds and that the statute was not concerned "with a sale which is void because of the manner in which it is conducted such as one in which there is fraud." 159 S.W.2d at 818. We agree that this section would not bar a suit based on actual fraud in connection with a tax sale but we are not concerned here with actual fraud. We deal only with whether the sale may be attacked on the basis of the size of the successful bid. In our view that is similar in nature to those grounds listed in § 140.-610 such as that the land was not subject to taxation at the time of assessment or that taxes for which the property was sold have been timely paid. We do not base our decision on § 140.610 but we do consider that our decision is consistent with its provisions.

We are asked in this appeal to invalidate these sales solely on the basis of our previous application of the inadequacy of consideration rule to the Jones-Munger law. Upon reconsideration, we have determined that extension of this doctrine of constructive fraud was unnecessary and unwise in view of the extensive statutory provisions which fully protect the interests involved. In fact, we have concluded that continued application of the rule makes Chapter 140 ineffective and nullifies what we perceive to have been the intention of the general assembly.

Accordingly, we affirm the judgment of the trial court. Cases such as *Pettus v. City of St. Louis*, 328 S.W.2d 636 (Mo.1959), *Costello v. City of St. Louis*, 262 S.W.2d 591 (Mo.1953), *Liese v. Sackbauer*, 222 S.W.2d

84 (Mo.1949), *Johnson v. McAboy*, 350 Mo. 1086, 169 S.W.2d 932 (1943), and *Bussen Realty Co. v. Benson*, 349 Mo. 58, 159 S.W.2d 813 (banc 1942), are overruled insofar as they are in conflict with the views herein expressed.

All concur.

deed shall be required to prove, in order to defeat the title conveyed by such deed, either that the land described therein was not subject to taxation at the date of assessment of the tax for which it was sold, or that the taxes for the nonpayment of which the land was sold were paid to the proper officer within the time limited by law therefor, or that the same had not been assessed for the taxes for the nonpayment

of which it was sold, or that the same had been redeemed pursuant to law, or that a certificate in proper form had been given by the proper officer, within the time limited by law for paying taxes or for redeeming from sales made for the nonpayment thereof, stating no taxes were due at the time such sale was made, or that at the date of the deed the redemption period had not expired."