

# Missouri Court of Appeals

## Southern District

## Division One

REAL ESTATE RECOVERY, LLC,    )
    )
        Appellant,    )
    )
vs.    )    No. SD36349
    )    Filed: October 14, 2020
BRANSON HILLS FACILITY    )
INFRASTRUCTURE COMMUNITY    )
IMPROVEMENT DISTRICT,[1]    )
    )
        Respondent.    )
    )

### APPEAL FROM THE CIRCUIT COURT OF TANEY COUNTY

Honorable Jeffrey M. Merrell, Judge

### **AFFIRMED**

Real Estate Recovery, LLC ("RER") appeals[2] from the trial court's summary judgment in favor of Branson Hills Facility Infrastructure Community Improvement District ("the District"). In one point relied on, RER argues that the trial court erred in entering summary judgment in favor of the District, in that the District's assessments did not survive the post-third-offering sale at

---

[1] At the time Real Estate Recovery, LLC filed its amended petition, additional defendants included Branson Hills Development Company, LLC (dismissed on August 29, 2016, after filing a disclaimer of interest); Arvest Bank (default entered on August 29, 2016); SRC Lending, LLC (dismissed on August 29, 2106, after filing a disclaimer of interest); and City of Branson (dismissed on August 29, 2106, after filing a stipulation of dismissal).

[2] This case was initially appealed to our Supreme Court of Missouri on September 27, 2019 (SC98128). On October 3, 2019, our Supreme Court entered an Order stating: "Cause ordered transferred to the Missouri Court of Appeals, Southern District, where jurisdiction is vested. *Mo Const. art. V, sec.11*." (Emphasis in original).

which RER purchased the four parcels of real estate ("the Parcels") at issue. Finding no merit to RER's point, we deny the same and affirm the judgment of the trial court.

## Facts and Procedural History

We recite those matters properly injected (pursuant to Rule 74.04's orderly procedure)[3] from the summary judgment record below, and about which there is no genuine dispute as demonstrated by the record.[4] *See Doe Run Resources Corporation v. American Guarantee & Liability Insurance*, 531 S.W.3d 508, 511 (Mo. banc 2017). We recite such other material as necessary for context to our instant disposition.

This case derives from the Taney County Collector's ("the Collector") post-third offering for delinquent community improvement district ("CID") assessments levied by the District against the Parcels, which RER purchased at the offering. RER subsequently filed a petition to quiet title. Thereafter, RER and the District both filed motions for summary judgment. RER argued (in relevant part) that, pursuant to the Community Improvement District Act (the "CID Act")[5] and the Jones-Munger Act,[6] RER's Collector's Deeds terminated all District special assessments as to the Parcels.[7] The District—also relying on the Jones-Munger Act and the CID Act—argued (in relevant part) that the sale did not impair the District's power or authority to impose and levy

---

[3] All rule references are to Missouri Court Rules (2020).

[4] In their briefs (and again at oral argument), both parties agreed that there was no genuine dispute of material fact in the record, and that the sole question before this Court is legal.

[5] §§ 67.1401-1561.

[6] §§ 140.010-722. All references to statutes are to RSMo Cum.Supp. 2013, unless otherwise indicated.

[7] We observe that RER's summary judgment motion also argued that the applicable statute of limitations barred the District's challenge to RER's claimed fee-simple interest in the Parcels. The argument section of RER's brief likewise attempts this claim—fatal to that attempt, however, RER's point relied on (*infra*) fails to encompass this statute-of-limitations claim. *See* Rule 84.04(e) ("The argument shall be limited to those errors included in the 'Points Relied On.'"). *See Piatt v. Indiana Lumbermen's Mutual Insurance Company*, 461 S.W.3d 788, 794 n.4 (Mo. banc 2015) (Where an appellant's argument section attempts to claim reversible error beyond the scope of the attendant point relied on, "[t]he Court will not consider it.").

2

"future . . . special assessments" within the boundaries of the District, and that either RER's Collector's Deeds were invalid or RER owed the delinquent 2015 assessment amount, as RER was required (and failed) to pay that sum before receiving its Collector's Deeds. The trial court entered summary judgment in favor of the District, and against RER.

In the instant appeal, the sole and *narrow* issue before us is whether—in light of the controlling provisions of the CID Act and the Jones-Munger Act—assessments levied or imposed by the District against the Parcels after the post–third-offering sale survive, such as to impose a continuing lien on the Parcels (and a corresponding obligation on RER to remit payment for such subsequently levied or imposed assessments).

A discussion of the governing Acts at issue (*i.e.*, the CID Act and the Jones-Munger Act) is necessary to frame the procedural and substantive import of the more particular facts and litigation history attending this matter (set out more fully *infra*), and we therefore provide an overview of each Act in turn.

### *Governing Statutory Framework*

### *The Community Improvement District Act*

In 1998, our legislature adopted the CID Act for the purpose of the establishment, proper governance, and operation of CIDs. The CID Act directs the manner by which real property owners within a specified area may form a CID as either a not-for-profit corporation or a political subdivision. § 67.1411. Once formed, these entities are granted powers enabling them to carry out numerous fiscal initiatives, primarily facilitated by the ability of those entities to raise funds[8]

---

[8] § 67.1521.4, in relevant part, directs that a
> district imposing a special assessment pursuant to this section may ***not*** repeal or amend such special assessment or lower the rate of such special assessment if such repeal, amendment or lower rate will impair the district's ability to pay any liabilities that it has incurred, money that it has borrowed or obligations that it has issued.

through special assessments and taxes for the provision of public infrastructure. § 67.1461(8). CIDs may be used to fund, among other things, the installation of public infrastructure improvements (such as roadways, sidewalks and sewers), the creation of parks, the operation of buses and other modes of transportation, the provision of security personnel, the promotion of tourism and cultural events, and the remediation of blighted conditions on private property. *Id.*

As relevant here, the CID Act designates the nature and import of CID assessments, their imposition and delinquency, and the collection thereof:

•The county collector "shall collect the real property taxes and special assessments made upon all real property within that county and district, in the same *manner* as other real property taxes are collected. § 67.1541.1.

•"[T]he county collector may, upon certification by the district for collection, add each special assessment to the annual real estate tax bill for the property and collect the assessment in the same manner the collector uses for real estate taxes. Any special assessment remaining unpaid on the first day of January annually is delinquent and enforcement of collection of the delinquent bill by the county collector shall be governed by the laws concerning delinquent and back taxes. The lien may be foreclosed in the same manner as a tax upon real property by land tax sale under chapter 140 [the Jones-Munger Act] or, if applicable to that county, chapter 141." § 67.1521.5.[9]

---

(Emphasis added). In the same vein, we note the suggestion of *amicus* Missouri Municipal League ("the MML") that while "*Amicus Curiae* is not an underwriter of municipal bonds or a bank, . . . its member municipalities have participated in countless public finance transactions, and *Amicus Curiae* can assure this Court in great confidence that the ability to obtain financing for a project correlates directly with the amount of security available to a potential creditor." Although the representations of counsel (as in the MML brief) are not evidence, *see **Sansone Law, LLC v. J&M Securities, LLC**,* 589 S.W.3d 74, 86 (Mo.App. E.D. 2019), we find such to be expositionally facilitative for purposes of the CID Act, and therefore set it out here for that limited purpose.

[9] Section 67.1521 was amended in 2011 and 2013 (along with other subsequent amendments containing changes not otherwise germane to our instant discussion). RER points out in its reply brief that the pre-2011 version of this section did not include the now-extant language concerning foreclosure and tax sale pursuant to chapters 140 and 141. RER first claims that the District's "assessment . . . predate[s] that amendment and cannot apply retroactively." Next, RER undercuts the premise of its argument by ceding that the 2011 amendment to section 67.1521, "only allows the District to make the *manner* of billing and collecting the amounts due to the District the same as real estate taxes, not the *priority* of the amounts due." (Emphasis in original). As our Supreme Court has indicated, "[p]rocedural and remedial statutes not affecting substantive rights, may be applied retrospectively, without violating the constitutional ban on retrospective laws." ***Hess v. Chase Manhattan Bank, USA, N.A.***, 220 S.W.3d 758, 769 (Mo. banc 2007) (internal quotation and citation omitted). "Procedural law prescribes a method of enforcing rights or obtaining redress for their invasion; substantive law creates, defines and regulates rights. The distinction is that substantive law relates to the rights and duties giving rise to the cause of action, while procedural law is the machinery used for carrying on the suit." *Id.* (internal quotations and citations omitted). As RER apparently concedes, the 2011 amendment to section 67.1521.5 merely dealt with the mechanism and machinery by which delinquent CID assessments were to be collected (and not substantive rights), and the Missouri constitutional ban on retrospective

4

•"Each special assessment which is due and owing shall constitute a ***perpetual lien*** against each tract, lot or parcel of property from which it is derived." § 67.1521.5.

(Emphasis added).

The CID Act designates the specific requirements and procedures for the removal of real property from a CID in sections 67.1441 and 67.1442. Neither section—nor any other provision of the CID Act—provides that collection (or partial collection) of delinquent assessments via the procedures set out in the Jones-Munger Act[10] removes the subject property from a CID, or removes from a CID the power or authority to impose or levy future assessments on that property. *See* §§ 67.1401-1571.

### *The Jones-Munger Act*

Since 1935, the Jones-Munger Act, currently codified in chapter 140, has governed tax sales in Missouri. Generally, the provisions of the Jones-Munger Act direct the manner and effect of certain (potentially) successive tax sale offerings, whereby the collector attempts to sell "[a]ll lands . . . on which taxes or special assessments are delinquent and unpaid[.]" § 140.150.1. Among other requirements, the Act provides that the collector "publish[] for three consecutive weeks" a list of the delinquent properties subject to the collector's offering of sale, including "in the aggregate[,] the amount of taxes, penalty, interest and cost due thereon, each year separately stated." § 140.170.1&.2, RSMo Cum.Supp. (2015). For the first three of these successive offerings, the collector may not sell the subject property unless in receipt of a bid "equal to the delinquent taxes thereon[,]" along with the associated "interest, penalty and costs[.]"[11]

---

laws is not implicated. The 2013 amendment to section 67.1521.5 applies (along with subsequent amendments), and we therefore recite from the most recent version here, and apply it in our analysis (*infra*).

[10] *See* § 67.1521 (authorizing collection of delinquent assessments via the procedures and mechanisms set out in the Jones-Munger Act).

[11] *See* § 140.240.1 (governing first and second offerings); § 140.250.1 (governing third offerings).

Thereafter—and as occurred in the instant matter—the collector may at its discretion, attempt to sell the property at one or more post-third offerings. As long as the collector performs such offering at least once every five years, the statute of limitations will not bar enforcement of the lien attendant to the subject property, and the collector may continue offering the property. § 140.250.3&.4. There is "no period of redemption from such post-third[-]year [offering] sales[.]" § 140.250.4. In a post-third offering, the collector may—subject to certain exceptions not applicable here[12]—offer and sell the subject property "at any time and for any amount." § 140.260.8. Notably, however,

> before any purchaser at [a post-third-offering] sale to which this section is applicable shall be entitled to a collector's deed it shall be the duty of the collector to demand, and the purchaser to pay, in addition to his bid, all taxes due and unpaid on such lands or lots that have become due and payable on such lands or lots subsequent to the date of the taxes included in such advertisement and sale.

§ 140.250.4.[13]

### *Litigation History*

### *Formation of the District and Imposition of Assessments*

On July 7, 2006, property owners petitioned the City of Branson ("City") to create a CID, as a political subdivision of the state of Missouri, and with the power to levy special assessments. The City approved Ordinance No. 2006-108 on July 24, 2006, establishing the District as a political subdivision of Missouri with the powers authorized by the CID Act.[14] An amended petition was filed and in response, the City adopted Ordinance No. 2007-034[15] on March 26, 2007, adding

---

[12] *See generally* § 140.260.

[13] *See generally* § 140.170.

[14] *See* §§ 67.1401-67.1571.

[15] Both Ordinance No. 2006-108 and No. 2007-034 state that the District had the power and authority to levy special assessments on real property within the District.

certain real property to the District. The Parcels were at that time (and are still) located within the District.

To finance certain improvements, the District adopted Resolution No. 2007-03 ("the 03 Resolution") on May 3, 2007, which authorized the issuance of the District's Special Assessment Revenue Bonds, Series 2007A (the "Bonds") in the principal amount of $18,405,000. The 03 Resolution stated the Bonds were "obligations of the District payable from the proceeds of the Special Assessments[.]"

That day, the District also adopted Resolution No. 2007-04 ("the 04 Resolution") which, beginning in 2008, authorized the District to levy annual special assessments against real property within the District to pay debt service on the Bonds, make any required trust indenture payments, and pay the District's administrative costs. Specifically, the 04 Resolution authorized and directed the District to, on a yearly basis, determine the amounts to be assessed against each lot, unit, tract, or parcel of real estate in the District, levy those amounts by special assessment, and notify the Collector of the amounts levied for collection, pursuant to the CID Act. Notably, the 04 Resolution provided that:

> The Special Assessments levied in each year by the District shall constitute a perpetual lien against each tract, unit, lot or parcel of property from which it is derived, and may be foreclosed in the manner described in the CID Act.[16]

Pursuant to Resolutions 03 and 04, the District entered into a Trust Indenture ("the Indenture") with a bond trustee under which the District issued and sold the Bonds.[17] The District improvements were completed with bond proceeds, and under the Indenture, the District was to

---

[16] We observe that the CID Act provides the initial authorization for the District's provision, in that the provision was an exercise of the statutory power delegated to the District under the CID Act. *See* § 67.1521.

[17] The Trust Indenture was made and entered into as of May 1, 2007, by and between the District and U.S. Bank National Association as trustee, as successor in interest to Commerce Bank as trustee, under the Trust Indenture and with respect to the Bonds.

7

repay the Bonds through its levy and collection of special assessments. The Indenture stated that the Collector would collect the special assessments levied on properties within the District and remit the proceeds to the District. Next, as the Indenture indicates, the District was to transfer those proceeds to the bond trustee, who was to apply the proceeds to make payments (when due) on the Bonds' principal and interest. If the proceeds of the District's levied special assessments were not sufficient to make the payments on the principal and interest due to the bondholders, the District would "default" under the terms of the Indenture.

From 2008 to 2016, the District levied annual special assessments on the real property within the District, including the Parcels. The Collector obtains real estate taxes and special assessments for the taxing jurisdictions therein, including (as applicable here) the District, and enforces delinquent tax and special assessments liens by land sale. For those times relevant to the instant appeal, the Collector included taxes and special assessments for the Parcels on the same tax bill.

### *The Parcels: Delinquent Assessments, Offerings, and Sale to RER*

The District's levied assessments for the Parcels went unpaid in 2011, 2012, 2013, and 2014, and became delinquent. As a consequence of the delinquencies,[18] the Parcels were offered for sale by the Collector, via the Jones-Munger Act tax sale process, in 2013 (first offering) based on the 2011 and 2012 delinquencies, in 2014 (second offering) based on the 2011, 2012, and 2013 delinquencies, and in 2015 (third offering) based on the 2011, 2012, 2013 and 2014 delinquencies.[19]

---

[18] *See* § 140.010.

[19] The summary judgment record before us does not include the amounts of these individual assessments.

On September 3, 2015, the District levied assessments on the Parcels for the cumulative amount of $219,339.31, which were not paid and became delinquent. On April 12, 2016[20] (post-third offering), the Collector again offered the Parcels, this time for delinquent assessments for 2011 through 2014). At the offering, the Parcels were sold to the highest bidder (RER) for $17,900[21] (less than the amount of delinquent assessments, taxes, penalty, interest and costs owed for the Parcels).

On May 25, 2016, RER filed its petition to quiet title to the Parcels, amending the petition on June 21, 2016, to name the District as a party defendant.

In September 2016, the District levied additional assessments on the Parcels for the cumulative amount of $230,286.64, to be paid by the end of 2016 by RER. The assessment was not paid, and became delinquent.[22]

---

[20] The trial court's summary judgment (in its "Findings of Fact") finds that the date of the offering and sale at issue was "[o]n or about the 12th day of April, 2016," and also (in the trial court's order following its "Conclusions of Law") to have occurred "in May 2016[.]") This discrepancy is not substantive for our purposes, and we therefore simply utilize the date the trial court first reports in its judgment (*i.e.*, April 12, 2016).

[21] The Collector distributed the amount paid by RER for the Parcels on a pro rata basis among the applicable taxing jurisdictions, including the District.

[22] The record reflects, and the parties agree, that the 2015 assessment delinquency for the Parcels (and the associated delinquency amounts) were not advertised pursuant to the April 2016 tax sale, that the Collector did not demand or obtain payment from RER for such delinquent amount prior to issuing RER Collector's Deeds for the Parcels, and we observe that the Collector's Deeds only reflect extant delinquencies for 2011-2014 (and not 2015). On this basis, the District impliedly suggests trial court error in that "RER was not entitled to Collector's deeds[,]" and that "RER's Collector's deeds never became valid." Later in its brief, the District argues that "[t]he District has the statutory power to levy . . . special assessments each year after the April 2016 tax sale." RER, in its reply brief, treats the latter argument as reflecting "the District's . . . concession the tax sale extinguished its liens on the Parcels for the hundreds of thousands of dollars of unpaid assessments before the 2016 tax sale." The District agreed at oral argument that the amounts owed, pursuant to the 2015 delinquent assessment, are no longer sought by the District, and are no longer at issue in the instant appeal. (Specifically, counsel for the District stated: "We're talking about future assessments, we're not talking about prior assessments, or prior liens or any delinquencies whatsoever." "The primary issue in this case is CID assessments after that 2016 tax sale. Period."). Nevertheless, this issue is not raised in RER's point relied on, and the arguments attendant to RER's point are all premised on the invalidity of the District's assessments as a whole, and on an entirely different basis than in the vein indicated, *supra*. *See* Rule 84.04(e) ("The argument shall be limited to those errors included in the 'Points Relied On.'"). The District's position here is solely as respondent, as it did not file a cross-appeal. (As relevant to this issue, *ex gratia* we observe that in 2016, the Missouri legislature did not pass House Committee Substitute for House Bill 1757, which would have required liens and CID boundaries to be filed with the Recorder of Deeds).

Thereafter, in mid-2017, RER and the District filed cross-motions for summary judgment. RER argued that it was entitled to a "judgment divesting any title or interest from [the District,]" in that the Parcels "were conveyed to [RER] via Collector's Deeds following a statutory post-third[-]offering tax sale by the Taney County Collector[.]" Specifically, RER claimed it was entitled to judgment in that the District: (1) "failed to prosecute its claims on the past due special assessments such that many of the same are barred by applicable statute[]"; and (2) "the special assessments asserted by [the District] are inferior to those general taxes of Taney County, for which the properties were sold, such that the Collector's Deeds were issued free and clear of special assessments." The District argued that the sale did not impair the District's power or authority to impose and levy "future . . . special assessments" within the boundaries of the District, and that either RER's Collector's Deeds were invalid or that RER owed the delinquent 2015 assessment amount, as RER was required (and failed) to pay the delinquent assessments, costs, fees and interest before being entitled to the Collector's Deeds to the Parcels.

The trial court heard argument on the cross-motions for summary judgment on November 26, 2018, and denied those motions on November 26, 2018. At a hearing on July 25, 2019, the parties jointly requested the trial court reconsider its denials of the motions. The matter was taken under advisement.

On August 19, 2019, the trial court entered its "Findings of Fact, Conclusions of Law and Judgment." The trial court granted summary judgment in favor of the District and against RER on all claims and defenses. The trial court specifically found that the 2015, 2016, and subsequent special assessment levies continued to encumber the Parcels, RER's purchase of the Parcels at the tax sale did not extinguish the District's special assessments or remove the Parcels from the

10

District, and the 90-day limitation period in section 67.1561 expired prior to RER's suit. This appeal followed.

In its sole point relied on, RER argues:

> The trial court erred in granting summary judgment to the District that its assessments on and interest in the Parcels survived the tax sale to RER *because* on the undisputed facts the District was not entitled to judgment as a matter of law and instead RER was entitled to judgment as a matter of law, as (1) under §§ 140.250.4 and 140.420, R.S.Mo., the sole encumbrance or interest in a parcel of real property that can survive its delinquent tax sale after the collector's third offering are future real estate taxes, (2) special assessments levied on land to pay for local improvements, including those levied by a Community Improvement District, do not qualify as real estate taxes, and (3) the CID Act does not make this different than any other lien or interest *in that* RER purchased the Parcels in a post-third-offering tax sale and received a collector's deed, which extinguished all existing right, title, and interest of anyone else in the Parcels forever, including the District and solely excepting future real estate taxes.

(Emphasis in original).

**Standard of Review**

"Appellate review of the grant of summary judgment is essentially *de novo*." ***Newton v. Mercy Clinic East Communities***, 596 S.W.3d 625, 628 (Mo. banc 2020) (citing ***ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply Corp.***, 854 S.W.2d 371, 376 (Mo. banc 1993)). "Summary judgment is appropriate when there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law." ***Doe Run***, 531 S.W.3d at 511. In the present matter, the summary judgment record demonstrates no genuine dispute of material fact; therefore, the sole question is whether the District was entitled to judgment as a matter of law. *See* ***Knopik v. Shelby Investments, LLC***, 597 S.W.3d 189, 191 (Mo. banc 2020).

11

Where an issue of statutory interpretation is preserved and presented in accord with the rules of appellate procedure, our review of that issue on appeal from summary judgment is *de novo*. *See Sofia v. Dodson*, 601 S.W.3d 205, 209 (Mo. banc 2020).[23]

As our Supreme Court indicated in *Harpagon MO, LLC v. Bosch*, 370 S.W.3d 579 (Mo. banc 2012), "[t]his Court's primary rule of statutory interpretation is to give effect to the legislative intent as reflected in the plain language of the statute at issue." *Id.* at 582 (internal quotation and citation omitted). Further, in construing "chapter 140 [(the Jones-Munger Act)], the words must be considered in context and sections of the statutes in *pari materia* as well as cognate sections, must be considered in order to arrive at the true meaning and scope of the words." *Id.* at 583 (internal quotation and citation omitted). Here, we must construe the relevant portions of the CID Act in accord with those of the Jones-Munger Act, because *pari materia* "requires that statutes relating to the same subject matter be construed together even though the statutes are found in different chapters and were enacted at different times." *State ex rel. Director of Revenue, State of Mo. v. Gaertner*, 32 S.W.3d 564, 566 (Mo. banc 2000).

## Analysis

RER argues that the trial court erred in granting summary judgment to the District in that the District's assessments did not survive the post-third-offering sale at which RER purchased the Parcels. Specifically, RER relies on language in the Jones-Munger Act to the effect that a successful purchaser receives the property in "fee simple,"[24] and that the Collector's Deed received

---

[23] *See TracFone Wireless, Inc. v. City of Springfield*, 557 S.W.3d 439, 444 (Mo.App. S.D. 2018) ("The parties correctly assert that several of the matters at issue are legal, and our review is *de novo*—but *de novo* as to what? *De novo* as to those matters of law properly lodged by the parties, pursuant to Rule 84.04, and consistent with attendant principles of appellate review.").

[24] § 140.420.

12

by such purchaser has "priority over all other liens or encumbrances on the property sold except for real property taxes."[25]

The District, and the Missouri Municipal League ("the MML") (filing a brief as *amicus curiae*[26] in support of the District), both argue that the plain language of the CID Act[27] and the Jones-Munger Act support the trial court's judgment. Specifically, the District and MML suggest that CID assessments are to be treated as real estate taxes for purposes of the Jones-Munger Act tax sale procedures.

In addressing this issue of first impression, each party attempts to support its preferred interpretation of the Jones-Munger Act and the CID Act by relying on and distinguishing numerous cases running the gamut from the 1930s all the way back to the mid-19th century. While we extol each counsel's evident diligence in this respect, for the reasons well expressed in our Supreme Court's recent opinions in *Sneil, LLC v. Tybe Learning Center, Inc.*, 370 S.W.3d 562, 566 n.3 (Mo. banc 2012)[28] and *Harpagon*, 370 S.W.3d at 583 n.4, we do not find the cases relied upon by

---

[25] *See* § 140.250.4.

[26] *See* **Brainchild Holdings, LLC v. Cameron**, 534 S.W.3d 243 n.7 (Mo. banc 2017) ("[A]n amicus curiae must take the case as he finds it, with the issues made by the parties.").

[27] *See* §§ 67.1401-67.1571.

[28] In *Sneil*, 370 S.W.3d at 566 n.3, our Supreme Court admonished our appellate courts against unwarranted reliance on past (and otherwise inapplicable) case law in interpreting the Jones-Munger Act:

> Part of the confusion that has led to a conflict in the court of appeals opinions relating to the timing and content of the notice of the right to redemption in tax sale cases has been the court's imparting analysis from the holdings in prior cases even though the statutes had been revised or otherwise amended. *See*, *e.g.*, *United Asset Mgmt*. [*Trust Co. v. Clark*], 322 S.W.3d [159,] 164 [(Mo.App. W.D. 2010)].

In *United Asset Management*, 332 S.W.3d at 164 (*abrogated by Sneil*, 370 S.W.3d 562; *Harpagon*, 370 S.W.3d at 584), the Western District's erroneous reliance (as designated in *Sneil*) seems to have been directed at analysis from *State ex rel. Baumann v. Marburger*, 182 S.W.2d 163 (Mo. 1944) and *Hobson v. Elmer*, 163 S.W.2d 1020 (Mo. 1942) in construing the Jones-Munger Act. Our Supreme Court further counseled on this issue in *Harpagon*, 370 S.W.3d at 583 n.4:

> Both of these arguments have been adopted by the court of appeals in separate and conflicting opinions, creating confusion and setting forth two different interpretations of when a purchaser is authorized to acquire the deed. Reliance by the court of appeals on case law that predates the

the parties controlling as to the *current* issue before us in light of the *current* statutory regime.  As such, we need not further treat party arguments premised on such inapplicable authority.[29]  Thus, the substance of RER's argument—properly (or curatively) construed—and our proper and primary task in this appeal is necessarily one of statutory interpretation, not the application of *stare decisis*.[30]

"The goal of statutory interpretation is to give effect to the General Assembly's intent as reflected in the plain language of the statute at issue." *Interventional Ctr. for Pain Mgmt. v. Dir. of Revenue*, 592 S.W.3d 350, 353 (Mo. banc 2019) (internal quotation and citation omitted).  "The provisions of a legislative act must be construed and considered together and, if possible, all provisions must be harmonized and every clause given some meaning.  The legislature is presumed not to enact meaningless provisions." *Dickemann v. Costco Wholesale Corp.*, 550 S.W.3d 65, 68 (Mo. banc 2018) (internal quotations and citations omitted).  As applicable here, our Supreme Court specifically directs that in construing "chapter 140 [(the Jones-Munger Act)], the words must be considered in context and sections of the statutes in *pari materia,* as well as cognate sections,

---

addition of § 140.405 and the notice requirement it creates is at least partially responsible for this confusion.
(Curiously, the District directs us to *Harpagon* for the principle that our review of summary judgment is *de novo*, but not for *Harpagon*'s guidance on the use of prior case law in the interpretation of the Jones-Munger Act).

[29] Although we observe that the parties' briefs also attempt to rely on more recent cases, none of those cases are controlling as to the issue presented under the current statutory regime.

[30] "Under the doctrine of stare decisis, a court follows earlier judicial decisions when the same point arises again in litigation and where the same or an analogous issue was decided in an earlier case, such case stands as authoritative precedent unless and until it is overruled." *Rothwell v. Dir. of Revenue*, 419 S.W.3d 200, 206 (Mo.App. W.D. 2013) (internal quotation and citation omitted).  "The principles of legislative deference as well as *stare decisis* should be respected," *Dodson v. Ferrara*, 491 S.W.3d 542, 558 n.9 (Mo. banc 2016), and as such "*stare decisis* is most essential regarding prior statutory interpretations because it is there that the rule of law and respect for the separation of powers meet." *State v. Pierce*, 433 S.W.3d 424, 444 (Mo. banc 2014) (internal quotation and citation omitted).  Significantly, however, "the maxim of stare decisis applies only to decisions on points arising and decided in causes and [does] not extend to mere implications from issues actually decided." *State ex rel. Beisly v. Perigo*, 469 S.W.3d 434, 454 (Mo. banc 2015) (internal quotation and citation omitted).  Here, the issue before us has not been directly decided in prior case law under the applicable versions of the CID Act and the Jones-Munger Act.

14

must be considered in order to arrive at the true meaning and scope of the words."[31] *Harpagon*, 370 S.W.3d at 584 (internal quotation and citation omitted). Here, in *pari materia* requires the relevant portions of the CID Act (where the statutory authority initially derives) to be construed in accord with those of the Jones-Munger Act.[32]

Instead, RER's argument begins its statutory discussion with sections 140.250 and 140.420.4 of the Jones-Munger Act.[33] Section 140.250.4, governing third and post-third offerings, *in toto* states:

> A purchaser at any sale subsequent to the third offering of any land or lots, whether by the collector or a trustee as provided in section 140.260, shall be entitled to the immediate issuance and delivery of a collector's deed and there shall be no period of redemption from such post-third year sales; provided, however, before any purchaser at a sale to which this section is applicable shall be entitled to a collector's deed it shall be the duty of the collector to demand, and the purchaser to pay, in addition to his bid, all taxes due and unpaid on such lands or lots that become due and payable on such lands or lots subsequent to the date of the taxes included in such advertisement and sale. *The collector's deed or trustee's deed shall have priority over all other liens or encumbrances on the property sold except for real property taxes.*

---

[31] In framing these principles Judge Lamm, in *State ex rel. Major v. Ryan*, 133 S.W. 8, 14 (Mo. 1910), counseled that when "expounding" a statutory scheme, "one rule is that effect should be given to all its words, when possible, *without violating reason*; another is to consider the context, and those sections in pari materia, as well as cognate sections, and *get at the true intendment of the act*, having regard to the maxim, [']*The explanation should arise from the whole subject-matter* (Ex tota materiae emergat resolutio.[']"). (Emphasis added).

[32] RER seemingly argues that the Jones-Munger Act is more specific than the CID Act, and should therefore control: "the . . . CID Act only governs community improvement district liens and encumbrances generally, whereas the [Jones-Munger] Act specifically governs what happens to all prior liens and encumbrances upon a tax sale." While it is true that RER relies on an accepted principle of statutory interpretation, *see City of Aurora v. Spectra Communications Group, LLC*, 592 S.W.3d 764, 788 (Mo. banc 2019), we are not persuaded by RER's application of that principle between the Jones-Munger Act and the CID Act. Rather, as the District properly indicates:
> [RER]'s argument makes no sense on its own terms. It is not clear why RER believes Jones-Munger is the more specific statute when by RER's own characterization it governs 'all prior liens,' of any provenance through the tax sale process. In contrast, the CID Act is limited in scope to defining the statutory powers of community improvement districts, and providing that a district's assessments are perpetual liens collected just like real property taxes. RSMo. §§ 67.1521.5, 67.1541.1. The inverse of RER's argument—that the CID Act is the more specific and Jones-Munger the more general statute—is the logical conclusion.

[33] We observe that following RER's point relied on, it lists sections 140.250 and 140.420 as the "statutory . . . provisions . . . upon which [it] principally relies." *See* Rule 84.04(e).

15

§ 140.250.4 (emphasis added). RER attempts to rely on the last sentence of this subsection (emphasized above) in arguing that since the District's assessments are not "real property taxes," RER's Collector's Deeds must have priority over the District's future assessments.

RER makes a similar argument with respect to section 140.420, which states:

> If no person shall redeem the lands sold for taxes prior to the expiration of the right to redeem, at the expiration thereof, and on production of the certificate of purchase and upon proof satisfactory to the collector that a purchaser or his or her heirs, successors, or assigns are authorized to acquire the deed, the collector of the county in which the sale of such lands took place shall execute to the purchaser, his or her heirs or assigns, in the name of the state, a conveyance of the real estate so sold, *which shall vest in the grantee an absolute estate in fee simple*, subject, however, to all claims thereon for unpaid taxes except such unpaid taxes existing at time of the purchase of said lands and the lien for which taxes was inferior to the lien for taxes for which said tract or lot of land was sold.

§ 140.420 (emphasis added). RER points to the fee simple language, and argues that property taken in fee simple means not subject to ongoing or future CID assessments.

However, RER's argument fails to effectively confront the fact that when the governing cross-sectional legislative framework is viewed and understood in *pari materia*, it is clear that authority for the sale by which RER acquired the Parcels now at issue comes *first* from the CID Act, and only *then* (based on that Act's authorizing cross-reference in section 67.1521) the Jones-Munger Act. As applicable here, the CID Act provides that:

> •The county collector "shall collect the real property taxes and special assessments made upon all real property within that county and district, in the **same *manner* as other real property taxes are collected.**" § 67.1541.

> •"[T]he county collector may, upon certification by the district for collection, **add each special assessment to the annual real estate tax bill** for the property and **collect the assessment in the same *manner* the collector uses for real estate taxes**. Any special assessment remaining unpaid on the first day of January annually is delinquent and enforcement of collection of the delinquent bill by the county collector shall be governed by the laws concerning delinquent and back taxes. **The lien may be foreclosed in the same *manner* as a tax upon real property by land tax sale under chapter 140** [the Jones-Munger Act] or, if applicable to that county, chapter 141." § 67.1521.

16

•"**Each special assessment which is due and owing shall constitute a *perpetual lien* against each tract, lot or parcel of property from which it is derived**." § 67.1521.

(Emphasis added).

When in *pari materia* consideration of this legislative framework begins properly, as it must, with the CID Act, *supra* (rather than an afterthought to the Jones-Munger Act, as structured in RER's argument), the legislature's intended construction becomes obvious. As the District correctly indicates, if real estate "taxes" meant real estate taxes *only* (per the CID Act's utilization of the Jones-Munger Act) and *not* CID assessments, the entire legislative framework for the collection of delinquent CID assessments would be rendered utterly nonsensical [34] The District tersely (and accurately) expounds on this point in its brief:

> RER's theory, if adopted, would allow properties sold at tax sale to drop out of the District, choking the purpose and powers of the [District] parcel by parcel. RER's theory would result in a free-rider situation exclusively benefiting RER: it would own property benefitted by the improvements made in the District, and the services provided by the District, but would not be required to pay its share of the special assessments supporting those improvements and services. . . . Instead, all of the other properties within the District would be required to take up the slack of RER's free-riding by paying incrementally more in special assessments.

The MML's brief articulately reiterates these important considerations and the potential negative implications of RER's proffered interpretation of the CID Act and the Jones-Munger Act:

> Under [RER]'s analysis, in districts where the sole source of revenue is special assessments, the Jones-Munger tax sale process and inability to impose future special assessments would render such districts as lifeless liabilities, potentially unable to afford to operate in compliance with Missouri law and unable to pay any fines associated with non-compliance. . . . Essentially, [RER] is asking this Court to determine that the property owners within a community improvement district, by not paying due and owing special assessments and ultimately subjecting their respective properties to the Jones-Munger tax sale process could cause community improvement districts to functionally, but not legally, terminate, and incur significant fines in the process, all of which would never be paid. Such an outcome stands in contrast to the orderly process described in RSMo § 67.1481 [in the CID Act] for the legal termination of a community improvement district.

---

[34] *See **State ex rel. Hillman v. Beger***, 566 S.W.3d 600, 608 (Mo. banc 2019) ("[T]he construction of a statutory scheme should avoid unreasonable or absurd results.") (internal quotation and citation omitted).

(Internal footnote omitted).

By contrast, RER argues in its reply brief that "the District ignores that it had a full remedy for this problem of which it and its *amicus* complain by redeeming the property." In support, RER directs us to *Powell v. St. Louis County*, 559 S.W.2d 189, 193 (Mo. banc 1977), for the proposition (as framed by RER) that "the Supreme Court held the [Jones-Munger] Act adequately protects a county or other public lienholder's ability to collect on its prior lien on a tax-delinquent property by its ability to purchase or redeem the property[,]" in that "public entities are protected by the legislature's addition to the Act of § 140.**206** [sic][.]" (Emphasis added) We discern that RER intended section 140.**260**, which the District agrees controls such issue (and under which the District argues CIDs are *not* covered authorized entities). The *current* version[35] of section 140.260.1 in relevant part provides:

> It shall be lawful for the county commission of any county, and the comptroller, mayor and president of the board of assessors of the city of St. Louis, to designate and appoint a suitable person or persons with discretionary authority to bid at all sales to which section 140.250 is applicable, and to purchase at such sales all lands or lots necessary to protect all taxes due and owing and prevent their loss to the taxing authorities involved from inadequate bids.

§ 140.260.1. Regardless, even assuming *arguendo* that (as RER impliedly posits) the "county commission of any county, and the comptroller, mayor and president of the board of assessors of the city of St. Louis" should be read to mean "Community Improvement District," section 140.260 merely ***allows*** such covered entities to arrange to bid on properties, it does not ***require*** them to do so.

---

[35] It appears that *Powell* construed the 1939 version of section 140.260—that section was amended in 2003, and 2010, the latter of which we utilize here. 559 S.W.2d at 193. *See Sneil*, 370 S.W.3d at 566 n.3; *Harpagon*, 370 S.W.3d at 583 n.4.

Viewed properly (in *pari materia*), the authority for the sale by which RER acquired the Parcels now at issue comes first from the CID Act, and only then (based on that Act's authorizing cross-reference) the Jones-Munger Act. As the District correctly points out in its brief, "[t]he Legislature [is] presumed to have passed the CID Act fully expecting the law to meet the purpose of the legislation, that is, to fund public improvements, repay debt, and permit ongoing operation and maintenance of a community improvement district." *See Gaertner*, 32 S.W.3d at 567 ("When the legislature has altered an existing statute such change is deemed to have an intended effect, and the legislature will not be charged with having done a meaningless act."). Plainly, as the District correctly argues, the legislature intended to utilize the existing statutory mechanism for the collection of real estate taxes (the Jones-Munger Act) to facilitate the collection of delinquent CID assessments (pursuant to the CID Act).

Meanwhile, nothing in either Act suggests legislative intent to remove property from the CID's power and authority to levy or impose assessments when sold via the Jones-Munger Act. Rather, the plain language of the CID Act demonstrates just the opposite—to-wit: the Act provides a specific (and narrow) mechanism by which property is removed from a CID's power and authority to levy or impose assessments. *See* §§ 67.1441-1442. Unsurprisingly, that mechanism is ***not*** a sale for delinquent assessments via the procedure set out in the Jones-Munger Act. *See id*. "[W]here one statute deals with a subject in general terms and another deals with the same subject in a more minute way, the two should be harmonized if possible, but to the extent of any repugnancy between them the definite prevails over the general." *Gaertner*, 32 S.W.3d at 566.

As the District and the MML correctly indicate, the plain language of the Acts at issue demonstrates that the legislature intended to facilitate the collection of delinquent CID assessments (the CID Act) via the existing framework for the collection of real estate taxes (Jones-Munger

19

Act). The CID Act grants CIDs important "powers enabling them to carry out numerous fiscal initiatives, primarily the ability to raise funds through special assessments . . . for the provision of public infrastructure."[36] "[O]nce [a] special assessment has been established, the district is guaranteed to have the financial backing it needs to issue obligations or obtain loans necessary to make improvements or provide services."[37] RER's proffered interpretation would betray these reasonable expectations of CIDs throughout Missouri. Simply put, neither the plain language of the Acts at issue, nor the legislative intent underlying them support RER's argument in this appeal.

RER fails to demonstrate that the trial court erred in entering summary judgment in favor of the District, and RER's sole point relied on is accordingly denied.

The judgment of the trial court is affirmed.

WILLIAM W. FRANCIS, JR., J. – OPINION AUTHOR

GARY W. LYNCH, P.J. – CONCURS

NANCY STEFFEN RAHMEYER, J. – CONCURS

---

[36] *Henderson v. Bus. Loop Cmty. Improvement Dist.*, 588 S.W.3d 896, 899 fn.2 (Mo.App. W.D. 2019) (internal quotation and citation omitted).

[37] Joseph G. Lauber, *Public-Private Partnership in Community Development: Applying Constitutional Standards for Implementing the Missouri Community Improvement District Act*, 59 J. Mo. Bar 80, 84 (2003) (cited with approval in *Henderson*, 588 S.W.3d at 899 n.2; *BHA Group Holding, Inc. v. Pendergast*, 173 S.W.3d 373, 376 n.3 (Mo.App. W.D. 2005); *Day v. Robinwood West Cmty. Improvement Dist.*, 693 F.Supp.2d 996, 1000 n.3 (E.D. Mo. 2010)).